WILLIAM E. MANN, and another, in equity,

vs.

HELEN S. JACKSON.

Penobscot.     Opinion March 29, 1892.

*Will.   Condition.   Limitation.   Restraint of Marriage.*

A testator devised his homestead to an unmarried daughter, " for and during her natural life, unless she shall be married, in which case her life estate shall cease.   So long as she shall live and remain unmarried she is to have the exclusive right of occupation, use and enjoyment of said homestead." *Held*; that the intention of the testator, as manifested by the whole instrument, was not to promote celibacy by imposing a condition in restraint of his daughter's marriage, but only.to create a limitation of her estate in the homestead until by her marriage another home should be provided; and that the daughter's exclusive right to the possession and enjoyment of the entire homestead accordingly ceased upon the marriage.

ON REPORT.

Bill in equity, heard by agreement upon the facts stated in the bill including the will itself, brought to obtain the legal construction of the will, of the late William Mann, as affecting the rights of the defendant in her father's homestead, she having married since his death.

The facts and material parts of the will are stated in the opinion.

*A. W. Paine*, for plaintiffs.

*C. H. Bartlett*, for defendant.

The provision in the will by which the life estate of the testator's daughter was to cease, if she married and the homestead go to his three children, is a condition subsequent in general restraint of marriage, without a valid limitation over, and therefore void.   But if not, yet in a devise to trustees to pay over the net income to the testator's grandson, "so long as he shall remain unmarried," the condition was held void and the grandson was entitled to the income after .his marriage. *Otis* v. *Prince*, 10 Gray, 581.   Unqualified restrictions on marriage are void on grounds of public policy, 2 Jarm. Wills. 572, (5th Am. ed.).   A condition was held void where the testator did not regard his daughter as being in a fit state of

health to marry on account of a supposed nervous affection. *Morley* v. *Rennoldson*, 2 Hare, 570 (24 Eng. Ch. 571). A condition subsequent annexed to a devise or conveyance of real estate, if of a general character, is void. *Randall* v. *Marble*, 69 Maine, 310; *Otis* v. *Prince*, *supra*. Most courts (not all) admit the doctrine that a condition in restraint of marriage will be upheld when there is a valid gift or limitation over. *Randall* v. *Marble*, *supra*. The limitation over to the testator's heirs is void. *Randall* v. *Marble*, *supra*; *Otis* v. *Prince*, *supra*; 4 Kent Com. *506. It is also void because the estate limited over is incorporated with the whole residue of the testator's estate. *Parsons* v. *Winslow*, 6 Mass. 167, pp. 179, 181. When a subsequent condition is annexed to a gift of land, if general, it is void, and although broken, the estate of the donee continues. 2 Pom. Eq. § 933.

WHITEHOUSE, J. This is a bill in equity brought for the purpose of obtaining a judicial construction of the following will:

"1. I will that the money which may come from the policy of insurance, which I hold on my own life, be appropriated to the payment and discharge of any and all mortgages, then existing on my homestead house and lot on Cedar street, in said Bangor, so that said homestead may be free from all incumbrances, and any balance to be applied to pay any taxes then due or unpaid, on said homestead, and any balance to go with my other estate.

"2. My said homestead, house and lot aforesaid, I give and devise to my unmarried daughter, Helen S. Mann, for and during her natural life, unless she shall be married, in which case her life estate shall cease. So long as she shall live and remain unmarried she is to have the exclusive right of occupation, use and enjoyment of said homestead, but subject to the duty of keeping it in good repair at her expense and paying all taxes and keeping the property well insured. If all parties interested see fit to sell the property, they may do so, in which case said Helen is to receive the net income from the proceeds of sale, the same to be well invested for that purpose, and if

the buildings are burned in whole or part, the insurance money shall be applied to repair or rebuild, unless all agree to a different appropriation of the money, viz, all parties interested.

"3. All other estate, real and personal, of all kinds which I may own or possess at death, including the remainder of my homestead, house and lot aforesaid, my farm on the Odlin road so-called, and all other property, I give in equal shares to my three children, William E. Mann, Mrs. Augusta S. Harden and Helen S. Mann, to have and to hold the same to them and their heirs and assigns forever."

After the death of the testator Helen S. Mann married and is the defendant in this suit.

The language of the second item of the will is specially brought in question. The plaintiff says that the defendant's "life estate" in the homestead was terminated by her marriage, while the defendant contends that the clause limiting her exclusive title by her marriage, is void as being a condition in. restraint of marriage, and that she is entitled to the sole use and occupation of the homestead during her natural life.

It is undoubtedly an established rule of law that, even with respect to devises of real estate, a subsequent condition which is intended to operate in general and unqualified restraint of marriage, or the natural effect of which is to create undue restraint upon marriage and promote celibacy, must be held illegal and void, as contrary to the principles of sound public policy. It appears from the early English cases that this doctrine was borrowed by the English ecclesiastical courts from the Roman civil law which declared absolutely void all conditions in wills restraining marriage, whether precedent or subsequent, whether there was any gift over or not. But the courts of equity found themselves greatly embarrassed between their anxiety on the one hand to follow the ecclesiastical courts, and their desire on the other to give more heed to the plain intention and wish of the testator as manifested by the whole will. Thereupon the process of distinguishing commenced for the purpose of preventing obvious hardships arising from the application of that technical rule to particular cases. As a

result there has been engrafted upon the doctrine a multitude of curious refinements and subtle distinctions respecting real and personal estate, conditions and limitations, conditions precedent and conditions subsequent, gifts with and without valid limitations over, and the application of the rule to widows and other persons. Indeed, it may be said of the decisions upon this subject with even more propriety than was observed by Lord Mansfield in regard to another branch of law, that, "The more we read, unless we are very careful to distinguish, the more we shall be confounded." The whole subject as to what conditions in restraint of marriage shall be regarded as valid and what as void, would seem to be involved in great uncertainty and confusion both in England and in this country. There is clearly discernible, however, through all the decisions of later times, an anxiety on the part of the judges to limit as much as possible the rule adopted from the civil law. "The true rule upon the subject is," says Mr. Redfield, "that one who has an interest in the future marriage and settlement of a person in life, may annex any reasonable condition to the bequest of property to such person, although it may operate to delay or restrict the formation of the married relation, and so be in some respect in restraint of marriage. . . . . Where there are hundreds of conflicting cases upon a point and no general principle running through them by which they can be arranged or classified, what better can be done than to abandon them all and fall back upon the reason and good sense of the question, as the courts have of late attempted to do." 2 Red. Wills, 290, § 20, and note. See also *Id.* 297, and 2 Jar. Wills, 569. Beyond the general proposition first stated, the cases seem finally to resolve themselves for the most part into the mere judgment of the court upon the circumstances of each particular case. 2 Red. Wills, 297, § 31; 2 Pom. Eq. 933; *Coppage* v. *Heirs*, 2 B. Mon. 313, and note to same, 38 Am. Dec. 153.

But the rule was so far modified and relaxed that conditions annexed to devises and legacies restraining widows from marrying have almost uniformly been pronounced valid. 2 Pom.

Eq. *supra.* From the numerous decisions upon the subject in the United States, the conclusion is fairly to be drawn that such conditions will be upheld in the case of widows whether there is a gift over or not. 2 Jar. Wills, 563, note 29 ; 2 Red. Wills, 296 ; Sch. Wills, 603. See also recent cases of *Knight* v. *Mahoney*, 152 Mass. 523, and *Nash* v. *Simpson*, 78 Maine, 142.

In 2 Red. Wills, 296, the author says, "We apprehend there is no substantial reason either in law or morals why a man should be allowed to annex an unreasonable condition in restraint of marriage, one merely *in terrorem*, in case of a wife more than of a child or any other person in regard to whose settlement in life he may fairly be allowed to take an interest ; but the cases certainly, many of them, maintain such distinction."

It is unecessary, however, to enter upon an elaborate discussion of the subject. The existence of the rule as recognized in *Randall* v. *Marble*, 69 Maine, 310, is not here questioned. In that case the rule was applied to a "crude and ill-defined" proviso in a deed of real estate. We have no occasion to question the soundness of that decision. It was the judgment of the court upon a particular set of words in that deed. It is not an authority to control the judgment of the court respecting the construction of an entirely different set of words in a testamentary gift of real estate.

There is a recognized distinction between *conditions* in restraint of marriage annexed to testamentary dispositions, and restraints on marriage contained in the very terms of the *limitation* of the estate given.

In *Heath* v. *Lewis*, 3 DeG. M. &. G. 954, (1853) a testator made a gift of thirty pounds a year to an unmarried woman during the term of her natural life " if she shall so long remain unmarried." Lord Justice Knight Bruce said, "It must be agreed on all hands that it is, by the English law, competent for a man to give to a single woman an annuity until she shall die or be married, whichever of these two events shall first happen. All men agree that if such a legatee shall marry, the annuity would thereupon cease. 'During the term of her natural life, if

she so long remain unmarried,' is the technical and proper language of limitation as distinguished from a condition."

Lord Justice Turner said, "It may either be a gift for life defeated by a condition, or it may be a gift to her so long as she remains unmarried, that is, for life, if she be so long unmarried; and the question, is therefore, purely one of intention, in which of the two senses the words were used."

*Jones* v. *Jones*, 1 L. R. Q. B. Div. 279, (1876) is an important authority. It related to a devise of real estate, the testator's language being as follows: "Provided said Mary remains in her present state of single woman; otherwise if she binds herself in wedlock she is liable to lose her share of the said property immediately and her share to be possessed by the other parties mentioned." Blackburn, J., said, "A number of cases have been referred to, from which it appears that the courts of equity have adopted from the ecclesiastical or civil law, it is unnecessary to say to what extent, the rule that conditions in general restraint of marriage are invalid. The attempt to escape from the consequences of this rule led to decisions in which a great many nice distinctions were established as to whether the bequest amounted to a condition or only a limitation. If this point had been as to a bequest of personal estate, it would have been necessary to look at these decisions. But this is a devise of land which is governed by the rules of the common law, and it is admitted that there is no case which extends the rule as to conditions or limitations to devises of land.

"There is, I admit, strong authority, that when the object of the will is to restrain marriage and promote celibacy, the courts will hold such a condition to be contrary to public policy, and void. But here there appears to be no intention to promote celibacy. Now here, I think, when one sees the scope of the testator's dispositions it comes to this: 'I have left to three women enough to live upon, and if one of them dies I bring in Jemima and Mary. But if Mary (I suppose as the youngest she was most likely to change her state) happens to marry, her husband must maintain her, and her share shall pass to the rest.' Now, if

he had said this in express words, could it have been contended that his provision was contrary to public policy? I think not. It is admitted that the limitation to Mary until she marries is perfectly good, but it is said that here, because the disposition is in the form of a condition, it is bad."

Lush, J., said, "We ought to take the words in such a sense as to carry out the object of the testator, unless it is illegal; and as I read the words, the testator only meant to provide for her while she was unmarried. There is nothing in these words which compels us to think it was the testator's object that this niece should never marry at all; he probably supposed that she would be maintained by her husband, and did not mean to provide for husband and wife." See also Hotz's Estate, 2 Wright, 422 (38 Pa. St.); *Connell* v. *Executors*, 11 Casey, 100; *Graydon* v. *Graydon*, 23 N. J. Eq. 230; *Courter* v. *Stagg*, 27 N. J. Eq. 305.

It is the enlightened policy of courts of equity, when not restrained by compulsory rules, to seek to discover the intention of the testator from the whole instrument rather than from any particular form of words.

In the case before us, the testator makes careful provision in the first item of the will for the appropriation of so much of the proceeds of his life insurance as might be necessary to discharge all mortgages on the homestead. In the second item he devises the homestead to his unmarried daughter "for and during her natural life, unless she shall be married, in which case her life estate shall cease. So long as she shall live and remain unmarried she is to have the exclusive right of occupation, use and enjoyment of said homestead." In case all parties interested agree to a sale of the property, this daughter is to receive the net income of the proceeds, "the same to be well invested for that purpose;" and in the event of the destruction of the buildings by fire, the insurance money shall be applied in rebuilding them. In the third item he gives the residue including the remainder of his homestead to his three children in equal shares.

Here, then, is the case of a parent who has a recognized right and was under a moral obligation to interest himself in the

settlement of his daughter.   To the ordinary mind untrammeled by the "mediævalism of the law," there is nothing in the will indicating any other thought or feeling than an affectionate regard for the welfare and happiness of a beloved daughter, and an anxious desire to provide for her a permanent and comfortable home.   The modern court, free from the incubus of arbitrary legal dogmas, must fail to discover in the language of this will any suggestion of a purpose on the part of the father to impose a condition *in terrorem* in restraint of his daughter's marriage.   It discloses no other disposition than a praiseworthy desire to secure to the daughter the continued occupation and enjoyment of the old homestead until by reason of her marriage she should cease to need it ; then she was to share equally with her sister and brother in the entire estate.   It is manifest from the whole tenor of the will that nothing was more remote from the real purpose of the testator than the idea of discouraging the marriage of this daughter.   The intention was not to promote celibacy, but simply to furnish support until other means should be provided.   Because of the inadvertent use by the scrivener of the word "unless" this court is not compelled to impose upon this instrument an  intention which it is manifest from  the context the testator never had.   There is no  such inflexible rule ; the rights of the parties are not to be determined by an application of such a Procrustean method.   The provision is in no respect *contra bonos mores*.   It is not violative of any principle of sound policy.   And if it is here necessary and proper to recognize and maintain the distinction between a limitation and a condition subsequent, the language of this will should be held to constitute a valid limitation and not an illegal condition.

The defendant's exclusive right to the possession and enjoyment of the entire homestead, ceased upon her marriage.

*Decree accordingly.*

PETERS, C. J., VIRGIN, LIBBEY, EMERY and FOSTER, JJ., concurred.