Of course, if an appellate court should hold that the note in question was not presented within a reasonable time, such holding would discharge this defendant from liability.

The motion for a new trial by the defendant Edward C. Sutton is denied, and the motion for a new trial in the action against Louis H. Sutton is granted.

So ordered.

(174 App. Div. 113)

### In re SCHRIEVER'S ESTATE.

(Supreme Court, Appellate Division, Second Department.   September 29, 1916.)

1. WILLS &⇒544—CONSTRUCTION—REMAINDER—DEATH OR REMARRIAGE.

Testator gave the income of his real and personal estate to his wife during widowhood, and on her remarriage whatever the law allowed her in lieu of dower and remainder, with power to the widow and a son and executor to sell the realty, and gave to a daughter, who had married without his consent, $50, and further gave to a nephew $5,000 and to a brother-in-law $2,500, and provided that, should any of them die before the settlement of the will, the amount of his or her bequest was to go to the son and executor, and gave the remainder of his estate, "whatever it may be," to his son and executor or his heirs forever, such sum to be regulated by the first clause of the will. *Held,* that the gifts subsequent to the widow's life estate were to take effect only in the event of her remarriage, and were defeated by her death without remarriage.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1170, 1306; Dec. Dig. &⇒544.]

2. WILLS &⇒544—CONSTRUCTION—REMAINDER.

Under such will, the son took a remainder governed by the first clause of the will, giving an income to the widow during her widowhood, and hence, while her remarriage would have accelerated his enjoyment of the remainder, he took the remainder where she died without remarrying.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1170, 1306; Dec. Dig. &⇒544.]

Appeal from Surrogate's Court, Rockland County.

In the matter of the estate of John H. Schriever, deceased.   From parts of a decree of the Surrogate's Court (91 Misc. Rep. 656, 155 N. Y. Supp. 826), Annie C. McElroy and John H. Schriever appeal. Decree affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

John Patterson, of New York City (Herbert C. Brinckerhoff, of New York City, on the brief), for appellant McElroy.

James T. Clark, of Oswego, for appellant John H. Schriever.

Lewis M. Johnson, of New York City (Frank Comesky, of Nyack, on the brief), for respondent Henry J. Schriever.

THOMAS, J.   The testator, Schriever, whose will, executed in 1899, has been construed by the surrogate, died in 1910, leaving a widow, now living and unmarried, a son, Henry, and a daughter, Annie C. McElroy.   On May 17, 1899, the testator received a telegram, announcing that the sender, McElroy, had married testator's daughter on the previous evening.   Under the date of May 23d following, a lay-

man wrote the will on a blank form. After the usual introductory clause came this:

"First: After my lawful debts are paid, I give, & bequeath to my wife the income of all my real & personal estate while she remains my widow, should she remarry I want my estate to be divided as follows, as written & mentioned on page 2 of this will."

At this point was attached the telegram, with the usual heading, the message, and McElroy's name. The will then was continued:

"I hereby appoint my son Henry J. Schriever of New York City to be executor of this my last will and testament: hereby revoking all former wills."

Then follow the usual subscription sentence, the testator's name, the declaration, and signatures of the witnesses. On page 2 is this:

"Page (2) two  To my wife whatever the law allows her, in lieu of dower & remainder to be divided as hereafter mentioned. (1st) I bequeath to my wife & executor power to sell whatever real estate I may own at the time of my death if they deem it to advantage. (2nd) I bequeath to my daughter Annie C. fifty dollars ($50) my said daughter having married without my consent. I therefore give her the above small amount should my daughter die before the settlement of my will I bequeath said amount of ($50) fifty dollars, to my son & executor. (3rd) I bequeath to my nephew John H. Schriever son of my brother Herman in Attwistedt Germany the sum of five thousand (5000) dollars if said nephew should die before my estate should be settled said sum of five thousand dollars should go to my son & executor. (4th) I bequeath to my brother-in-law Diederick Hinck the sum of twenty five hundred (2500) dollars should said Hinck die before the settlement of my will said sum of twenty-five hundred dollars I bequeath to my son & executor. (5th) The remainder of my real & personal estate whatever it may be, I will & bequeath to my son & executor or his heirs forever, said sum to be regulated by the first clause of my said will & testament. I heretofore bequeathed to my daughter the sum of fifty dollars said small bequest was on account of marrying without my consent & knowledge, the only notice received by me was the telegram sent by her husband annexed to this will."

The widow seems to have been present at this trial, but does not appeal. The daughter appeals, and her main contention is that the gifts, including that to the son, were conditioned only on the remarriage of the mother. The son does not appeal, nor does the brother-in-law. The nephew appeals, and contends that the gift to him is limited upon the wife's death as well as her remarriage. The briefs are prepared with much care and learning, and every view of the subject carefully presented.

[1, 2] Any construction is open to criticism, as the will was drawn by an illiterate man, ignorant of the law, for an incensed father, himself unlearned in legal principles and rules of construction. It is in vain to expect a product free of illogical conceptions and obscure or baffling expressions. The wife took a life estate during her widowhood, which would end by her death or marriage. If she remarried, she took "whatever the law allows her, in lieu of dower." There seems to be concurrence in the surrogate's view that she would take only dower, a conclusion which is not satisfactory to me. How could she take dower in lieu of dower? Unless deprived of it by the will, the law allowed her to share in the personal estate and that he gave her in lieu of dower. But no appeal raises the question. The will

then says "remainder to be divided as hereafter mentioned." First comes a power of sale to the wife and executor, the son. If that power depends entirely upon her remarriage, she would not have any interest in the real estate unless she took her dower. Then he gives his daughter $50, and that to his son if the daughter die before the settlement of the will, and by the last sentence of the will he uses language that indicates faintly, perhaps, that the gift to her was absolute. Did he intend to give the daughter $50 only in case of his wife's remarriage? There seems to be no relation between such remarriage and the gift. Under such construction, if the wife remain unmarried, he punishes the daughter because she had married and her mother had not. The daughter loses also by death before the "settlement of my will." Does that mean that it goes to her brother if she dies after the remarriage and before her mother? If her brother took under a general residuary clause, it was unnecessary to say that. But it is not expectable that the composers of the will would know that. I rather expect that they would not know it, but rather that they would write what should happen if the event occurred. Then by the third clause he gives his nephew in Germany $5,000, but over to testator's son in case of the nephew's death before the settlement of the estate, and by a similar conditional clause he gives his brother-in-law $2,500. Then by the fifth clause he gives the remainder of his estate, "whatever it may be," to his son, "said sum to be regulated by the first clause of my said will & testament." That meant that the remainder given the son should be ruled, governed, by the first clause of the will; that is, the gift of the income to the widow during her widowhood. There can be no doubt of that construction. It means that whatever the amount may be the son shall take, and that the "sum," that is, the total, shall be amenable to the provision in the first clause of the will. But suppose that the wife remarries, did the testator mean that in that case only the nephew and brother-in-law should take $7,500 out of the estate, which shows about $39,000? Under that construction, the son would be punished by his mother's remarriage by losing $7,500, while if she died unmarried the son would take the $7,500 as a part of the remainder. If an ordinarily rational and intelligent person had composed the will, it would be difficult to ascribe such motive to him. On the other hand, the will in unmistakable words states that if the widow should remarry, the testator wants his estate to be divided as written and mentioned on page 2. Upon looking at page 2, it is found that provision is made for the widow inconsistent with the life gift, but consistent with her new status. The gifts to the nephew and brother-in-law on the same page 2 can be read only in the relation to the words on the first page, "should she remarry." The provisions are tied together by words that say the exact thing, viz. "should she remarry," the estate shall be divided as "written & mentioned on page 2," and on page 2 there are the gifts under consideration. I would interpolate in the first clause of the will the words "die or," if I could find any language that indicates that it should be done. But nothing with such tendency is discoverable. It can, of course, be argued that the will construed otherwise is hurtful to the son, and that the rela-

tion created is illogical. But the will cannot be recast to make the testator either logical or even sensible in his conceptions. Some speculation may be better than others, but it all ends in conjecture, if the language be not followed. Perchance the testator thought that the gifts out of the immediate family, so that the son and mother would both suffer by remarriage, would have its restraining influences. Maybe—and it is not a persuading imagining—he felt that if his widow by remarriage should not need support, he could benefit his nephew and brother-in-law with less injury to his son's remainder. But it is said by the daughter that if the nephew and brother-in-law take only on remarriage, the son's residuary gift is also so limited. Testator created a life estate in his wife. Even he and his scrivener knew that something was left. They said nothing, however improvident the failure to do so, to detract from the situation in which the very words placed the nephew and brother-in-law, but when the provision for the son was reached, the gift was not left dependent on the remarriage alone, but rested on the whole of the first clause. The particular estate in its full breadth was for a life; so on a life the remainder was limited, but the marriage would accelerate its enjoyment, although it would, maybe, decrease the corpus. The difference of intention in the gifts to the son is too manifest to be ignored, however great the hardship it entails upon the nephew and still more upon the daughter. The additional words in the gift to the son meant something. They meant what they said, and what they said is quite clear for the present will.

The decree of the Surrogate's Court of Rockland County should be affirmed, without costs. All concur.