HETTIE D. IRWIN and Others, Plaintiffs, *v.* CHARLES D. IRWIN and WILLIAM H. WHITING, as Surviving Executors of and Trustees under the Last Will and Testament of WILLIAM DURYEA, Deceased, and Others, Defendants.

Second Department, November 2, 1917.

**Will — trust — life estate in income with contingent remainder over in case remainderman does not marry — when remainder divested by remarriage of remainderman — when payment to trustee essential to accomplishment of testamentary purpose.**

A will provided for two successive trusts as follows: During the lifetime of the testator's widow a certain sum from the income of the trust property was to be paid over to her, the remainder of the income to be divided into four parts and to be paid in equal shares to the three daughters of the testator and to a daughter-in-law who was the widow of the testator's son, it being further provided that each and every one of the four parts of said net residue of income should entirely cease upon the death of the testator's widow. It was further provided that upon the death of the testator's widow the executors should divide the remaining portion of the whole estate into four equal parts and should pay two of said parts to two of the testator's daughters or their lawful issue and that the remaining two parts should be held in trust, one-half the income thereof to be paid to a daughter of the testator for life and upon her death to such persons as she should designate by will or in default of such designation to her lawful issue, or in case she should leave no issue, then her part should fall into the residuary estate and that the income of the other share held in trust should be paid to the testator's daughter-in-law for life or until she should remarry and that upon her remarriage she should be paid the sum of $20,000, the remainder of the principal of her share to be paid to the testator's three daughters or their lawful issue. It appeared that after the making of the will the testator sanctioned the engagement of his daughter-in-law to a certain person and the marriage took place after the testator's death. On the death of the testator's wife it was contended by his three daughters that they were entitled to the corpus of the share held in trust for the daughter-in-law less the $20,000 bequeathed to her in the event of her remarriage, while on the contrary it is contended by the daughter-in-law that the term " remarriage " as used in the will means remarriage after the death of the testator's wife and that in any event the portion of the will depriving her of the corpus of the trust estate is void as in restraint of marriage.

*Held*, that it was the intention of the testator to provide for his daughter-in-law so long as she should remain unmarried and that should the legal duty of support fall on a husband by her remarriage her interest in the estate should cease with the exception of her right to the bequest of $20,000.

*Held further*, that the testator's approval of the proposed remarriage of his daughter-in-law did not show an intention to annul the contingent remainders given to his daughters in case his daughter-in-law remarried and that they were entitled to her portion of the trust estate less the bequest of $20,000.

*Held further*, that the provision limiting the gift to the daughter-in-law in case she should remarry was not void as a provision in restraint of marriage for alternative legacies on remarriage, balanced against prior provisions for support until remarriage, are not viewed as a restraint of marriage.

Although the testator's object might be accomplished by directing the surviving executors to account and pay over to the testator's three daughters and so save the intervention of the second trust, the latter trust was necessary, as the executors were directed to account to the trustee with respect to the share held for a daughter of the testator and compliance with the direction of the will in this respect would better carry out the testamentary purpose.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

On April 26, 1907, Mr. William Duryea, of Nyack, died, leaving an estate exceeding $700,000. By a will made in 1905 he provided for two successive trusts. During the lifetime of his widow, Frances (aged seventy-five at her husband's death), all the testator's property was to be held by the executors to pay to the widow yearly $10,000, and after providing for the taxes on the family residence, to divide the rest of the income in four parts equally between the three daughters and the daughter-in-law, Catharine, who was the widow of his son, William L. Duryea, who had died in 1902; " but each and every one of said fourth parts of the said net residue of income shall entirely cease upon the death of my wife." Paragraph 5, dealing with the estate after the death of the testator's wife, is as follows:

" *Fifth.* Upon the death of my wife I direct my said Executors to divide the said remaining portion of my whole estate into four equal parts and to pay one of said parts to my daughter Hettie D. Irwin or her lawful issue, another of said parts to my daughter Sara S. Hazen or her lawful issue and the remaining two parts to The Farmers' Loan & Trust Company of New York, In Trust Nevertheless to have and to hold the same as follows, namely, one-half part thereof for the benefit of my daughter Lillian C. Duryea and to pay to her the net income thereof semi-annually during her life

and upon her death to pay the said part so held for her to such person or persons as she shall by her Last Will designate and in default of such designation to pay the same to her lawful issue, or in case she leave no issue then the said part shall fall into the rest, residue and remainder of my estate to be distributed as provided in the fourth clause of this Will, and to have and to hold the other of said parts for the benefit of my daughter in law Catharine W. Duryea to pay to her the net income thereof semi-annually during her life or until she re-marry and upon her re-marriage to pay to her the sum of Twenty Thousand Dollars and upon her re-marriage or decease to pay the said principal sum in equal shares to my daughters, Nettie D. Irwin, Sara S. Hazen and Lillian C. Duryea or their lawful issue after deducting the said sum of Twenty Thousand Dollars in case of re-marriage."

After making this will the testator learned of, and sanctioned, the engagement of Catharine to the Rev. Samuel Angus, then a professor in a theological seminary. They were married on May 18, 1907, after the testator's death.

The widow, Frances, died on October 2, 1916. During her survivorship of nine years, the income had been divided between the widow and the four beneficiaries, as provided by paragraph 4 of the will.

The plaintiffs, who are the daughters of the testator and remaindermen under this 5th paragraph of the will, assert that on the mother's death they became vested with Catharine's quarter interest, less the sum of $20,000, which amount the Farmers' Loan and Trust Company has tendered to Mrs. Angus.

Mrs. Angus, on this submission, contends that, (a) the term " re-marriage " means such marriage *after* the death of Mrs. Frances Duryea; (b) that the provision ending the life interest and conferring the $20,000 is in " restraint of marriage," and, therefore, void; (c) as she had married Mr. Angus during the widow's lifetime that some other " re-marriage " must be contemplated by the will. There is also the question, if the remarriage has ended the trust for Mrs. Angus, should the surviving executors pay over the $20,000 directly to her, and then hand over the residue to plaintiffs, without the intervention of the Farmers' Loan and Trust Company as trustee?

*John N. Blair,* for the plaintiffs.

*Frank H. Twyeffort,* for the defendants Irwin and another, as surviving executors.

*Charles I. Wood,* for the defendant Catharine W. Angus.

*Charles A. Capron,* for the defendant Farmers' Loan and Trust Company, as trustee.

PUTNAM, J.:

Apparently the testator looked for a different sequence of events. He did not anticipate the possibility that the earlier trust would continue to apply to Catharine after her remarriage. By the widow's long survivorship, Catharine has enjoyed an income in the estate for nine years after becoming Mrs. Angus.

So long as Catharine remained the son's widow, she was to be treated with great liberality. She had an immediate legacy outright of $15,000, the same as the daughters. The first trust looked to the family as united by the mother. While she lived, her influence held them together, so that no separation was planned. After the break-up inevitable on her death, the *corpus* is cut into four parts. To Catharine the share goes in trust, to receive the income while she as a widow bears the Duryea name. When she should take up a new connection by remarriage, and was no longer under the old family ties, she was to have outright $20,000, leaving the residue to remain with the three daughters by adoption, of the testator.

The term " until " in the phrase " until she re-marry " is one of limitation, equivalent to the words " upon " or " up to " or " in the event of." It looks to remarriage as terminating the use or income, because breaking up the family dependence. It is the end of the annual payments, not the beginning of them. It shows a purpose, very natural and commendable, that this " intermediate maintenance " shall stop as fulfilled when that legal duty of support shall fall on a husband by such remarriage.

It is, however, urged that such a purpose to withdraw the use and income will not be inferred, even with such plain words, where it appears that the future husband had the

testator's approval, having been known to him in his lifetime. But the testator might well approve of the choice of the man, and still intend that the disposition over to the daughters should take effect. (*Bullock* v. *Bennett,* 24 L. J. [N. S.] Ch. 512.)

On the widow's death, when this new trust was to begin, the testator's limitation was not defeated by the fact that the contemplated remarriage had already occurred before the division of the estate under the 5th paragraph of the will. Remarriage was a prescribed condition on which the estate was then to turn. Catharine having already remarried, the fourth which she would otherwise take passes under the will to the three daughters named. (*McLean* v. *Freeman,* 70 N. Y. 81, 85; *Matter of Miller,* 161 id. 71.) She, however, urges that this amounts to a general restraint of marriage, which avoids the condition, and refers to the cases applying the civil law doctrine as to restraints of marriage. (*Scott* v. *Tyler,* 2 Dick. 712; 2 White & Tudor L. C. 144.)

Here the trusts under paragraphs 4 and 5 are entirely distinct. When the provisions under the former terminated wholly on the death of the testator's widow, Catharine is found to have remarried. In the words of GRAY, J., she had then obtained " that protection and the additional means for support, which marriage is usually presumed to bring." (*Robinson* v. *Martin,* 200 N. Y. 159, 163.)

In *Scott* v. *Tyler* (2 Dick. 712, 722) Lord THURLOW said: " Nay, according to Godolphin, the use of a thing may be given during celibacy; for the purpose of intermediate maintenance, will not be interpreted maliciously to a charge of restraining marriage." (See, also, 2 Jarman Wills, *886 [Ed. 1893], Bigelow's note.)

In *Jones* v. *Jones* (1 Q. B. Div. 279) the testator left all his estate to three women relatives during their lifetime, providing that the niece " shall remain in her present state of single woman, otherwise, if she shall alter her present state of single woman, and bind herself in wedlock, she is liable to lose her share of the said property immediately, and her share to be possessed and enjoyed by the other-mentioned parties, share and share alike." BLACKBURN, J., said: " looking at the object of this will, and the fact that

the testator probably thought that his property was not more than enough for these women to live upon together, his direction that the one who married should lose her share, cannot be said to be opposed to public policy." Authorities uphold a limitation designating marriage as the extent of the bequest, which the courts distinguish from a condition in restraint of marriage. The subject is now much simplified. Judge Redfield's addition to Story's text in 1861, which declared such conditions regarding marriage " involved in great uncertainty and confusion " (1 Story Eq. Juris. [8th ed.] § 291e), is no longer accurate.

In the case at bar, without discouraging remarriage or attempting something *in terrorem*, there is an outright gift of $20,000 as a final and generous bequest to a beneficiary then assuming a new and distant family connection. Instead of promoting celibacy, such a sum in hand under absolute control might, as a marriage portion, become an incentive to remarriage. Alternative legacies on remarriage, balanced against prior provisions for support until remarriage, are not to be viewed as a restraint of marriage. (*Hotz's Estate*, 38 Penn. St. 422; *Holbrook's Estate*, 213 id. 93; *Ruggles* v. *Jewett*, 213 Mass. 167; *Mann* v. *Jackson*, 84 Maine, 400; *Maddox* v. *Yoe*, 121 Md. 288.)

The defendant's claim arose from her widowhood. When she changed her state, and accepted the name and support of a second husband, she no longer has a *locus standi* under this trust.

Therefore, by the death on October 2, 1916, of Mrs. Frances Duryea, and the end and fulfillment of the trust to the surviving executors, the fourth part of the estate (after payment of the $20,000 to Mrs. Angus) passed to the plaintiffs.

It might be urged that the testator's object could be met by directing the surviving executors to account to and pay over this fund directly to the plaintiffs, and so save the intervention of the Farmers' Loan and Trust Company, as trustee. But the 5th paragraph expressly directs the surviving executors to pay the two remaining fourths to this trust company, which *inter alia* is to pay Mrs. Angus the $20,000 which the trust company has already tendered to her. The executors in any event have to account to the trust company in respect to Lillian's share. Compliance with

this express disposition of the will is, therefore, safer, and carries out the testamentary purpose. Hence the provision to pay to the trust company should take effect. In turn, the trust company is to account to, and pay over, the residue of this quarter interest to the three plaintiffs.

I,·therefore, advise: Judgment for the plaintiffs upon this submission, with costs out of the estate to all four parties appearing.

JENKS, P. J., STAPLETON, RICH and BLACKMAR, JJ., concurred.

Judgment for plaintiffs upon submission of controversy, with costs out of the estate to all four parties appearing.