In the Matter of the Estate of Justus G. Dettmer, Deceased.

Surrogate's Court, Kings County, May 14, 1941

*Morgan & Lockwood*, for the National City Bank of New York, as executor, etc., petitioner.

*Thomas A. Sully*, for the legatee, respondent.

*McDermott & Turner* [*Charles J. McDermott* and *Aaron Frank* of counsel], for the executor of the deceased distributee, respondent.

WINGATE, S. It is a well-established and familiar principle of the law of wills that a condition upon a testamentary gift imposing a general restraint upon the marriage of the beneficiary is void. (*Matter of Seaman*, 218 N. Y. 77, 81; *Matter of Liberman*, 279 id. 458, 464.) There is a general impression in this and in other States of the existence of an exception to this rule in respect of an estate to a surviving spouse during widowhood, although there appears to be a singular dearth of New York adjudications which have expressly so held (See *Chapin* v. *Marvin*, 12 Wend. 538, 540; *Matter of Schriever*, 174 App. Div. 113, 115; modified on other grounds, 221 N. Y. 268; *Matter of Byrnes*, 260 id. 465, 471), and it may well be that were the question to be directly litigated it would be determined that a condition of this nature which was not capable of interpretation as a mere limitation of the estate given to the surviving spouse would be invalid.

The question here presented, however, goes farther and propounds the issue as to whether a gift to a person, not the wife of the testator, expressly conditioned on her refraining from remarriage must be deemed subject to such express " condition." The language of the will which precipitates this problem is as follows:

" *Second*. I give, devise and bequeath unto my friend Mrs. Mary Vogelsang * * * all of the property, real and personal, of every nature whatsoever and wheresoever situate, of which I may

die seized or possessed, absolutely and forever, upon condition that she shall not remarry.

" *Third.* In the event that said Mrs. Mary Vogelsang shall remarry, the provisions of Paragraph Second hereof shall be null and void and the property thereby devised and bequeathed shall revert to my estate and be distributed and disposed of as if I had died intestate."

The parties have submitted an elaborate stipulation of facts, certain of which are worthy of recollection in attempting a solution of this problem which, so far as officially reported adjudications disclose, appears to be one of first impression in this State.

The indicated beneficiary, Mary Vogelsang, was married in 1904, when approximately sixteen years of age. Her husband died five years later, in 1909. In the same year she met the present testator, who was about thirty-one years of age and unmarried and a strong friendship was formed between them, which continued up to the time of his death. He never married. To his knowledge, she had limited means, and subsequent to his father's death, which occurred in 1934, he made frequent monetary gifts to her.

The testator was never gainfully employed and until his father's demise appears to have subsisted on an allowance from the latter. Thereafter he received an income from a trust erected by his father's will.

The present will was executed on November 11, 1922, at which time the testator's sole next of kin were his father, who was seventy-seven years of age, and a married sister, who was fifty-two. Both were in comfortable if not, indeed, in affluent circumstances. At the death of the father, in 1934, his gross estate amounted to $1,625,000. The sister's husband, who died in 1933, had substantial means, and, on her death in 1941, she left an estate of $380,000.

From the time of his father's death to his own the testator received a total of $158,341.83 from the income of the trust under his father's will. His gross estate amounts to $110,120.72, which appears preponderantly to represent savings from this income.

The present opponents on this construction proceeding are Mrs. Mary Vogelsang, who maintains that the " condition " against her remarriage as set forth in the will is void, and that she is entitled to the gift freed from its limitation, and the estate of the sister, whose position is that it is valid, and that if the beneficiary remarries her gift will be forfeited and the corpus of the testator's estate will " revert " to it, since at the time of his death in July, 1940, she was his sole statutory distributee.

In approaching a solution of the issue involved, it will be of advantage to consider the decisions which have distinguished

between conditions voiding estates on marriage of the donee and directions limiting their duration to the period of celibacy. In theory, the distinction between the two varieties of directions is clear. Unfortunately its application is at times fraught with no little uncertainty.

Perhaps the leading recent case on the subject of limitations is *Matter of Hughes* (225 App. Div. 29; affd., without opinion, 251 N. Y. 529) The will there adjudicated gave the life use of the entire estate to a married woman who was separated from her husband, further providing that if she returned to him, she should receive nothing and the estate should devolve to the children of the testator's nephew In sustaining the integrity of the direction, the court said (at p. 32): " I do not think that it can properly be said that the only design which decedent had in attaching this rather peculiar condition to his bequest was in the furtherance of an unlawful purpose on his part to keep Mrs. Conlan and her husband apart. To my mind, it is just as logical to conclude that the testator wanted to provide for the beneficiary of his bounty only in event that she continued to live alone and was deprived of the benefit, and, so far as the record shows, support of the wage earner of the family, in which case she would naturally need help; that if the two went back living together and Conlan furnished and maintained a home for his wife, and she was properly taken care of and did not need outside assistance, decedent preferred that his property should go to his own flesh and blood. An inference that one is moved by an improper or unlawful motive should never be drawn when a legitimate purpose is just as apparent."

A similar result was attained in *Irwin* v. *Irwin* (179 App. Div. 871, 876), where a trust was erected for a widowed daughter-in-law, which was to terminate on her remarriage, and in *Matter of Horton* (160 Misc. 64) and *Wise* v. *Crandall* ([Mo.] 215 S. W. 245), in which income gifts were made to daughters so long as they remained unmarried, but were directed to terminate on their marriages. Consonant results were also attained in *Appleby* v. *Appleby* (100 Minn. 408, 421; 111 N. W. 305); *Mann* v. *Jackson* (84 Me. 400; 24 A. 886), and *Anderson* v. *Crawford* (202 Iowa, 207; 207 N. W. 571).

If this principle be presently applicable, it is obvious that the condition is valid provided it refers to remarriage subsequent to the death of the testator which is another issue which has been extensively argued and briefed.

The contention made on behalf of the estate of the sister, however, goes further and urges that even though the language of the will be construed as implying an express condition against

marriage it is nevertheless enforceable, since it is a condition against remarriage and not against initial marriage.

The early law of England appears to be (See *Newton* v. *Marsden*, 2 J. & H. 356, 363; 70 Eng. Reprint, 1094, citing Comyn's Dig. part 3, chap. 17, § 9, Orphan's legacy) that " * * * although a condition directly contrary to marriage annexed to a legacy in a will is a void condition, yet the civil or rather the canon law both distinguish in this point between a virgin and a widow and says that such conditions against marriage (as to a virgin) are void, but allows them as to widows, specially if the legacy be given by a husband to his own wife or by a son to his mother."

In *Allen* v. *Jackson* (1 L. R. [Ch. D 1875–1876] 399, 403) this doctrine was extended to a condition upon a gift to a husband under his wife's will (to like effect see *Bostick* v. *Blades*, 59 Md. 231, 238) and in *Newton* v. *Marsden* (*supra*, 368), Vice Chancellor Sir W. PAGE WOOD went the whole distance and declared " that there is no authority in the common law * * * for saying that a condition restraining the marriage of a widow is void." He thereupon upheld a condition against remarriage imposed on a gift by an uncle to a niece.

This decision, rendered in 1865, may presumably be deemed to overrule the earlier decision in *Rishton* v. *Cobb* (9 Sim. 615, 619; 59 Eng. Reprint, 495) which declared a condition against marriage imposed upon a gift other than one to a person in the limited classes enumerated in Orphan's legacy, *supra*, to be in restraint of marriage and void.

In *Herd* v. *Catron* (97 Tenn. 662, 664; 37 S. W. 551) the validity of such a condition was held to apply to a bequest by a father to his daughter, and in *Overton* v. *Lea* (108 Tenn. 505, 554; 68 S. W. 250) to one by a son to his mother.

These adjudications respecting the law of other jurisdictions possess, of course, a considerable measure of academic interest. Obviously, however, the question of paramount importance concerns the law of this State and whether it recognizes a distinction between a condition imposing a general restraint on the marriage of a previously married person and of one who had not theretofore entered into that state.

Whereas no permanently reported decision of this State which has been called to the attention of the court or which its research has disclosed has discussed the subject, the situation adjudicated in *Matter of Liberman* (*supra*) concerned the validity of a condition imposed upon the marriage of a son who had been married on two previous occasions. (See p. 461.) The condition imposed upon the enjoyment by this son of his complete share in his father's estate

was that it " should be contingent upon the marriage " of the son " with the consent and approval of the executors and trustees named in the will." The court said (at p. 467): " * * * the natural tendency of the condition contained in the will is to restrain all marriage and for that reason it is void."

The general policy of the law of this State is stated in the same case (*Matter of Liberman, supra,* 464): " A condition calculated to induce a beneficiary to marry, even to marry in a manner desired by the testator, is not against public policy. A condition calculated to induce a beneficiary to live in celibacy or adultery is against public policy."

Logically, the last sentence of this quotation is equally applicable to all unmarried persons irrespective of whether or not they have previously been married. If the policy of the law favors living in accordance with the common concepts of propriety as appears obvious from the provisions of the Penal Law making adultery a criminal offense (Penal Law, § 101), there would appear no sound reason for invalidating an inducement for such action by a virgin and countenancing it in respect of a widow If, as was asserted in *People* v *Olmstead* (27 Barb. 9, 33), " The whole frame of government and laws has been said to exist only to protect and support the *family,* so that it may develop and perfect the character of its members," it is obviously the policy of the State to promote the formation of families which implies the uniting in matrimony of unmarried men and women. Obviously a person whose previous marriage has been terminated is as fully embraced within this policy as one who has never been joined in this state The facts of the present case furnish a striking example of this fact. The present beneficiary was only twenty-one years of age when she became a widow. Can it be asserted that merely by reason of the fact that she had attained this status, she was less eligible to become a successful wife and mother than other girls of her own age, many of whom do not marry until several years later? At the date of the will she was but thirty-four, an age at, or subsequent to, which many successful marriages are consummated. Had the testator died then, his condition against marriage, if validated, would have compelled her, though still a young woman, to live for a probable period of thirty-two and a half years, almost equal to the previous years of her life, in celibacy or adultery, or else forfeit the gift.

Argument might be conceivable in favor of validating all conditions against marriage. None is logically possible for validating those against remarriage and declaring invalid those against initial marriage. It is, accordingly, the conclusion of the court both on

the law of this State and on logical grounds that if the direction of the present testator is to be deemed a condition as distinguished from a limitation, it is void under our laws as contrary to public policy.

The estate of the sister has argued that if the direction is invalid as a condition, it should be effectuated as a limitation. As hereinbefore observed, the practical application of the distinction has at times been extremely tenuous, and the mere fact that in the present instance the gift to the donee is expressly made " upon *condition* that she shall not remarry " (Italics not in original), is not necessarily determinative of the issue. As the court reads the decisions which have construed as mere limitations language which to other minds or in other situations might well have been deemed conditions, there has in each instance been a demonstration of a positive wish to benefit identified alternate donees which was incapable of initial accomplishment by reason of the superior immediate needs of the primary donee and the insufficiency of available assets in excess of his or her requirements. This element is here absent. The clause as written is one of pure forfeiture. No alternate donee is individually designated. The testator has merely said, in effect, that if the primary donee has the temerity to disobey his tabu, she shall forfeit all claims to his bounty and his property shall go as the law directs. Unless the court misreads the tenor of the decisions which have engrafted this exception upon the usual rule against loss of rights by reason of acts in compliance with State policy, the present is not the variety of situation in which such equities are present as should induce a court to find a reason or pretext for an attempt to circumvent the usually applicable rule.

By reason of the views hereinbefore expressed, the contention on behalf of the donee that the condition intended was marriage prior to the death of the testator becomes academic, and discussion thereof would be futile.

It follows that " the beneficiary takes under the will as if no conditions had been annexed to the gift " (*Matter of Liberman, supra*, 469), in other words she receives an absolute and unqualified gift of " all of the property, real and personal " of the testator " absolutely and forever."

Enter decree on notice in conformity herewith.