In the Matter of the Estate of WILLIAM WILLIS MERRILL, Deceased.

JOHN C. WATSON and Another, as Executors, etc., of WILLIAM WILLIS MERRILL, Deceased, Appellants; J. LEE ENRIGHT, as Administrator, etc., of TAYLOR UNDERHILL, Deceased, and Another, Respondents.

First Department, April 4, 1924.

Wills — construction — testator provided in his will that no legacy should be paid until one year after his death and that legacies should lapse upon death of legatees before entitled to receive same — legacies lapsed upon death of legatees within one year after death of testator.

Under a will providing that " if any legatee shall have died before he or she shall have been entitled to receive the legacy, according to the terms of my will, then the same shall lapse and revert to and form part of the residuum of my estate," and further providing " that until one year shall have elapsed after my death no legacy shall be paid by them [my executors] to any of my legatees," no legatee is entitled to his legacy until one year shall have elapsed after the testator's death, and, therefore, the legacies to two legatees who died within one year after the death of the testator, lapsed and became a part of the residuary estate.

MARTIN and FINCH, JJ., dissent, with opinion.

APPEAL by John C. Watson and another, as executors, from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 6th day of June, 1923.

*Charles Putzel* [*Samuel Greenbaum* of counsel], for the appellants.

*George S. Fulton*, for the respondent J. Lee Enright, as administrator, etc.

*Wilson M. Powell* [*Alexander R. Wilson* with him on the brief], for the respondent Grace D. Underhill, as executrix of Robert Underhill, deceased, a legatee.

McAVOY, J.

The testator, William Willis Merrill, bequeathed to Robert Underhill, a brother-in-law of the testator's deceased wife, the sum of $5,000 and to Taylor Underhill, a son of a nephew of his deceased wife, he bequeathed a legacy of $10,000. Both of these proposed beneficiaries died within one year after the testator's death. His will provides in paragraph 4 for the possibility of lapsing of the legacies bequeathed and the right of reversion in such event as follows: " * * * If any legatee shall have died

before he or she shall have been entitled to receive the legacy, *according to the terms of my will* then the same shall lapse and revert to and form part of the residuum of my estate."

The residue is bequeathed to two friends, John C. Watson and Edmund F. Meyer, who are described as " my business associates for forty and twenty years duration, respectively, and who have been very loyal and faithful to me."

In paragraph 7 of the will there is contained the condition referred to in paragraph 4, upon which any legacy is payable, which reads: " That until one year shall have elapsed after my death no legacy shall be paid by them to any of my legatees, but not to postpone the payment of these legacies beyond the said one year following my death save as to the residuary part of my Estate my Executors being the residuary legatees may agree to hold or to sell their securities."

If these provisions are to be given the meaning which would be ascribed to them in the ordinary, current usage of the terms employed, they unequivocally tend to point out the testator's wish that upon the death of any persons to whom bequests are made within the year after the testator's death such legacies should revert to the residuary estate of the testator and go to the residuary legatees therein named.

The cardinal rule of testamentary construction is that the plain intent of the testator, as evinced by the language of his will, must prevail if such intent may be effected without contravention of any precept inherent in any public policy or statutory prohibition.

It would be abandoning this rule to declare that the testator meant by these expressions in his will merely to indicate a desire to suspend the payment of legacies for one year after his death. While it cannot be denied that the general rule makes postponement of the time of payment of a legacy, unless it be annexed to the substance of the gift, a non-contingent factor against its vesting, and that any contingency upon which a legacy depends must be of such a nature that it is to be presumed that the testator meant to make no gift unless that event happened, yet an examination of the context of the testamentary script now here for construction makes plain that while the collocation of the words of gift, and the words of time of payment are quite distinct, yet the intent seems to be, even granting this separation, to make no absolutely vested gift *in præsenti*, when the will speaks, but to defer to the future, that is, the end of the year, after testator's death, the time of ascertainment of the ultimate ownership.

The legacies and gifts in the will in controversy were not postponed merely as to the time of payment, as is the case in nearly

all the instances cited as controlling the construction of this will, nor was the suspension of time of payment simply for the benefit and convenience of administration of the estate, but as the testator says the legacies are to lapse and revert to the residuum of his estate if the legatee named as a beneficiary in any bequest of the will dies before the arrival of the time when he or she shall become entitled to receive the legacy.

According then to these very terms of the will, and not according to the legal interpretation of clauses of other wills where the terms are equivocal or ambiguous, no legatee is entitled to any legacy until one year shall have elapsed after testator's death.

The decree of the surrogate adjudging the two Underhill legacies absolute and vested upon the testator's death and ordering their payment with interest, together with costs as taxed, should be reversed in all respects, and a decree should be entered adjudging that both legacies lapsed by reason of the death of both legatees within a period of one year next succeeding the death of the testator.

The decree should, therefore, be reversed, and the matter remitted to the Surrogate's Court to proceed in accordance with this opinion.

DOWLING and MERRELL, JJ., concur; FINCH and MARTIN, JJ., dissent.

MARTIN, J. (dissenting):

On December 6, 1921, William Willis Merrill died, leaving a last will and testament, the construction of which is sought in this proceeding.

By the terms of his will, he made a number of bequests including one of $10,000 to Robert Underhill and one of $5,000 to Taylor Underhill. These legatees died within a year after the death of the testator.

The will provides in part as follows:

"*Third.* The foregoing bequests are made and to be paid to each legatee as herein named free of and from collateral inheritance tax and any other tax that may be legally imposed on such legacies. That those legatees who are legal minors *at the time of my death* General Guardians that they have or who may be appointed for them *shall receive their legacies* and to pay over the income derived therefrom, quarterly, or semi-annually until they shall have respectively attained their majority.

"*Fourth.* Should there be insufficient moneys, securities and property to pay the legacies in full, then and in that event, I direct my Executors to take off an equal percentage from each and every

First Department, April, 1924. [Vol. 208

legatee, treating them all equally alike. If any legatee shall have died before he or she shall have *been entitled to receive the legacy, according to the terms of my will* then the same shall lapse and revert to and form part of the residuum of my estate. * * *

"*Sixth.* All the rest, residue and remainder of my Estate, of whatsoever kind and wheresoever situate, I give and bequeath unto my friends, John C. Watson and Edmund F. Meyer share and share alike between them who have been my business associates for forty and twenty years duration, respectively, and who have been very loyal and faithful to me, and I do this in recognition of their services and aid to me in accomplishing what I have done in business and in which all the legatees herein mentioned will have derived the benefit of their assistance to me for so long a period.

"*Seventh.* I authorize and empower my executors to renew loans if wise and best for my estate which I personally have made to persons on their stock, and in the exercise of their best judgment, but not for more than one year. That until one year shall have elapsed after my death no legacy shall be paid by them to any of my legatees, but not to postpone the payment of these legacies beyond the said one year following my death save as to the residuary part of my Estate my Executors being the residuary legatees may agree to hold or to sell their securities."

The executors contend that the bequests made by the testator, William Willis Merrill, in each instance where the beneficiary died within one year after the death of the testator, lapsed and became a part of the residuary estate.

In construing the will the following rule must be borne in mind: " Where there is an absolute gift of real or personal property, in order to qualify it or cut it down the latter part of the will should show equally clear intention to do so by use of words definite in their meaning and by expressions which must be regarded as *imperative.*" . (*Tillman* v. *Ogren,* 227 N. Y. 495, 505.)

The numerous legacies given by the terms of the will are given outright to take effect on the death of the testator, no distinction being made with reference to any of them. The testator provided that in each instance when a legacy is given to an infant, if the infant has a guardian *at the time of testator's death,* the legacy is to be paid to the guardian, and if the infant is without a guardian *at the time of the testator's death,* a guardian is to be appointed and the legacy paid to the guardian, but the income paid to the infant through such guardian, thus indicating an intention to vest the legacy on his death.

Where a legacy vests at the time of death it will not be held to

be divested unless the testator has shown a clear intention to that effect.

In *Weber* v. *Kress* (198 App. Div. 687) the court said: " When an estate is given in one part of a will in terms which are clear and positive, such estate cannot be cut down by a subsequent clause of the will where the words are less clear than the words of the prior clause giving the estate."

In *Matter of Ithaca Trust Co.* (220 N. Y. 437, 441) the court said: " Where a gift is provided by will and such gift is intended to be absolute, a gift over is repugnant to such absolute gift and void and the purported gift over must be treated as a mere expression of a wish or desire regarding the distribution of such part of the gift as may remain undisposed of at the death of the donee."

The following provision of testator's will is particularly stressed on this controversy: " If *any* legatee shall have died before he or she shall have been entitled to *receive* the legacy, according to the *terms* of my will then the same shall lapse and revert·to and form part of the residuum of my estate."

The theory of the executors is that the words " if any legatee shall have died before he or she shall have been entitled to receive the legacy " should be construed to mean that if he shall have died before the legatee is entitled to *receive payment* of the legacy. Thus it is contended that the legatees who died within one year after the testator's death lost all right to their legacies; that the bequests to them lapse by reason of the provision in the will which provides that none of the legacies *shall be paid* until one year after the death of the testator.

The surrogate adopted a construction adverse to that contended for by the executors. He decided that the right to the legacies became fixed and absolute upon the death of the testator and not one year thereafter, at which time payment thereof was directed to be made, and that the payment clause did not affect the right to the bequests which became vested on the death of the testator.

Several provisions of the will are emphasized to show that the testator's intention was not that contended for by the executors.

Paragraph 7 is as follows: " * * * That until one year shall have elapsed after my death no legacy *shall be paid* by them to any of my legatees, but not to *postpone the payment* of these legacies beyond the said one year following my death save as to the residuary part of my Estate my Executors being the residuary legatees may agree to hold or to sell their securities."

In this paragraph the testator specifically refers to the *postponement of the payment* and uses the words " postpone *the payment of these legacies*," which indicates an intention that the legacies

should vest, postponing the payment only until one year after his death. One reason for postponing the payment may be found in paragraph 4 of his will, where he says: " Should there be insufficient moneys, securities and property to pay the legacies in full, then and in that event, I direct my Executors to take off an equal percentage from each and every legatee, treating them all equally alike."

This clause evidences a desire to insure a *pro rata* disposition by providing that it should be ascertained that there are sufficient funds in the estate to pay all the legacies in full before any of them are paid.

The 7th clause of the will also discloses an additional reason for the testator's postponing payment of the legacies for one year, and a very significant indication that the purpose of the testator was to vest the legacies on his death but not to pay them for a year. That clause says: " I authorize and empower my executors to renew loans if wise and best for my estate which I personally have made to persons on their stock, and in the exercise of their best judgment, *but not for more than one year.*"

This portion of the 7th clause is followed in proper sequence of thought by a clause, the construction of which is in dispute, and which undoubtedly shows what had given rise to this idea and was in the testator's mind when he made his will. He had evidently made loans which he did not wish to have called immediately upon his death, for that might embarrass the debtors to whom the loans had been made. They were probably friends. To prevent such embarrassment he provided for a renewal of the loans if the executors deemed it wise to do so, but for one year only. Knowing that a renewal of the loans would probably leave insufficient funds to pay the legacies, immediately after expressing this idea for the renewal of loans appears this thought providing for such a contingency by a postponement of payment, expressed by the language used for the first and only time in the will, that no legacy shall be *paid* until one year after his death. This seems to establish the fact that the idea to postpone payment of the legacies sprung from his desire to treat his debtors generously by giving them a year to arrange for a new loan to take the place of the one which necessarily had to be paid because of testator's death. His intention is also shown by the fact that the loans were not to be renewed for more than one year except that the executors, being also residuary legatees, might sell or withdraw their securities, again showing his desire to pay the legacies as soon as practicable under his will, but not the legacies left to the residuary legatees.

If the contention made by the executors be correct, the legacy of

a residuary legatee would lapse if he should die within one year after the death of the testator, for the clause with reference to payment of legacies applies with equal force to all the legacies left by the terms of the will, the only difference being that the residuary legatees may postpone the payment of their legacies for more than one year.

In *Matter of Wiley* (111 App. Div. 590), HOUGHTON, J., writing the dissenting opinion, which prevailed in the Court of Appeals (188 N. Y. 579) (at p. 599), said: "The law favors the vesting of estates; and limitations over, and vesting subject to be divested, and postponing enjoyment of property, will not be imputed to a testator if it can be avoided. It is only where the testator has unequivocally expressed his intention to create these artificial estates that the courts will adjudge them to exist. It quite frequently happens that authorities are of little aid in construing a will, but it would appear that the principles laid down in *Manice* v. *Manice* (43 N. Y. 303) and *Shangle* v. *Hallock* (6 App. Div. 55) were quite applicable to the language found in the will under consideration."

In *Bushnell* v. *Carpenter* (92 N. Y. 270) the court said: " A mere postponement of the time of payment will not make a legacy contingent." Thus, where one of two grandchildren, to each of whom a sum was bequeathed, payable when they were twenty-five years of age, died prior to that time, it was held that the legacy vested upon the death of the testator; that the various provisions showed that payment was postponed for the convenience of the estate; and that the administrator of the estate of the deceased grandchild was entitled to recover her legacy in an action brought after she would have been twenty-five years old had she lived.

In *Loder* v. *Hatfield* (71 N. Y. 92) the court held: " Where a gift of a legacy is direct and absolute, a subsequent and independent direction for payment on the happening of an event named does not defer the vesting of the legacy, but only postpones the payment, and if the legatee die before the happening of the event, his representatives are entitled to the legacy.

" So, also, where a direction for the payment of a legacy at a future day is for the convenience of the estate, or to let in some other interest, the vesting of the gift is not prevented."

In *Tillman* v. *Ogren* (*supra*) the court (at p. 502) said: " The gift over after a gift that is apparently absolute is sustained because it is ascertained that it was not the giver's intention to make an absolute gift, but one qualified and limited by the subsequent or other provisions of the will or instrument creating the gifts. (*Leggett* v. *Firth*, 132 N. Y. 7.) The common-law rule governing repugnant gifts has been changed by statute. (Real Property Law

[Cons. Laws, ch. 50], sec. 57; Personal Property Law [Cons. Laws, ch. 41], sec. 11.)"

We do not believe that the language of this will imperatively requires us to hold that the legacies are cut down where legatees die within one year after the death of the testator.

We are of opinion that the payment clause of the will was inserted out of abundant caution by a shrewd business man to protect his estate, and at the same time protect the legatees by postponing payment, thereby insuring equality in case it became necessary because of insufficient funds to pay in accordance with the terms of the will a portion only of each legacy. That clause cannot in the light of other parts of the instrument, be construed to qualify their right to the legacies.

The intent of this testator must be sought in his own language which was not particularly apt to the occasion, this will evidently having been dictated or written by him.

We think the surrogate correctly construed the will, and that his order should be affirmed.

FINCH, J., concurs.

Decree reversed and matter remitted to the Surrogate's Court to proceed in accordance with opinion.