BANKERS TRUST COMPANY, as Trustee, etc., and Others, Plaintiffs, *v.* JULIA TUCK FIRTH and Others, Defendants.

Supreme Court, Special Term, New York County, June 26, 1941.

White & Case [*John A. Gifford* of counsel], for the plaintiff Bankers Trust Company, as trustee, etc.

*Wiley, Willcox & Sheffield,* for the plaintiff The Chase National Bank of the City of New York, and for the defendants The Chase National Bank of the City of New York and George E. Warren and Donald Harper, as executors, etc., of Edward Tuck, deceased.

*Winthrop, Stimson, Putnam & Roberts* [*Allen T. Klots* of counsel], for the defendants Julia Tuck Firth, John Loxley Firth, Mary Nelson Firth and Elizabeth Morgan MacLaren.

*J. Hampden Dougherty,* guardian *ad litem* for the infant defendants Malcolm MacLaren, 3d, Brinley Morgan MacLaren and Julia Tuck MacLaren.

SHIENTAG, J. This action is for the judicial settlement of the intermediate accounts of the trustee under a voluntary deed of trust, and for the construction of the validity of the remainder provisions of that trust.

On December 5, 1911, Edward Tuck created a trust of personal property. The trustee by the instrument was directed to pay the income from the trust property to Julia Tuck Firth, the settlor's niece, for her life. Upon her death the trustee was directed to divide the trust property into as many equal shares as there shall be children of Julia Tuck Firth then surviving, or if not surviving, shall leave issue surviving them.

The trust indenture then disposed of the shares as follows·

" (a) If the two children of Julia Tuck Firth, to wit, John Loxley Firth and Mary Nelson Firth, or either of them, shall survive her, the Trustee shall hold one of said shares in trust for each of the said two children then surviving, and shall pay to said child the net income of said share until said child shall arrive at the age of thirty-five years, and then shall transfer and deliver to the said child the said share held in trust for him or her, but if either of said two children should die before arriving at the age of thirty-five years, then the Trustee shall transfer and deliver the share so held in trust for said child to such persons as the said child may by his or her will direct, or in default thereof to the persons who would be entitled to share in the estate of said child in accordance with the statute of distributions of the State of New York, and in the proportions therein prescribed.

" (b) If said Julia Tuck Firth should leave her surviving a child or children born after the date of this instrument, then upon

her death one of said shares shall become the property of each such child, but shall not be transferred or delivered by the Trustee until such child shall arrive at the age of thirty-five years, or the death of such child prior to arriving at said age; and in the meantime the Trustee shall pay to such child the net income of such share; it being the intention that as to the share of each such child the trust shall cease and determine upon the death of Julia Tuck Firth and that thereupon one of said shares shall forthwith vest in each such child.

" (c) If any one or more of the children of the said Julia Tuck Firth shall have died before the death of the said Julia Tuck Firth, leaving issue surviving at her death, the Trustee shall transfer and deliver one of said shares to the said issue of each such child."

When this trust was created in 1911, the primary beneficiary thereof, Julia Tuck Firth, had two children living, John Loxley Firth and Mary Nelson Firth, and on April 28, 1913, another child, Elizabeth Morgan Firth (now Elizabeth Morgan MacLaren) was born to Julia Tuck Firth. These three are the only children born to Julia Tuck Firth, and all three are now living. Elizabeth Morgan MacLaren has three infant children, Malcolm MacLaren, 3d, Brinnley Morgan MacLaren, and Julia Tuck MacLaren, all of whom are infants under the age of fourteen years.

Edward Tuck, the settlor, died on April 30, 1938, leaving him surviving all of the persons hereinbefore named. A question has arisen as to the validity of the remainder provision of the trust, and for that reason the present trustee seeks both an accounting and the construction of the trust in order to determine whether the remainders are valid as claimed by the trustee, the adult parties and the guardian on behalf of the infants, or whether there would be a reverter to the estate of Edward Tuck on the death of Julia Tuck Firth, the primary life beneficiary, as claimed by the executors of the estate of Edward Tuck.

Two questions are, therefore, presented for solution, (a) does the postponement of payment of a share of a child of Julia Tuck Firth, who was not in being at the creation of the trust and who survives Julia Tuck Firth, until such child attains the age of thirty-five years, unlawfully suspend the power of alienation? and (b) in the event that the power of alienation is suspended unlawfully by the postponement of payment until the age of thirty-five, what would be the effect of such suspension and to whom would the principal of the trust pass at the death of Julia Tuck Firth?

I. We have already seen that when the trust indenture was created Julia Tuck Firth had two children living. The validity of the provisions for the living children must be tested without reference

to the provision in the indenture for the after-born children. (*Matter of Davison*, 134 Misc. 769; affd., 230 App. Div. 867.) There would be no illegal suspension of the absolute ownership with respect to the living children because each share is measured only by the life of Julia Tuck Firth and by the life of the particular child for whom such share is set apart. (Pers. Prop. Law, § 11.)

In order to determine the rights of the child of Julia Tuck Firth who was born after the creation of the trust indenture in 1911 it is necessary to examine the trust indenture itself to ascertain (a) what the intention of the settlor was, and (b) whether the absolute ownership of the personal property was illegally suspended. Here we do not have to speculate as to the intention of the settlor as he expresses it in clear and unmistakable language.

Subdivision (b) of article first provides that any share set apart for a child of Julia Tuck Firth born after the execution of the deed of trust is to become the property of such child at the death of Julia Tuck Firth. This paragraph provides further that it is the intention of the grantor that as to such share the trust shall cease and determine at the death of Julia Tuck Firth, and that the share in question shall forthwith vest in such child. Thus we see that the settlor with scrupulous nicety has declared that upon the death of Julia Tuck Firth the trust should terminate, and the share should become the property of and vest in the after-born child. Additional evidence of the intent of the settlor is furnished by the absence of any provision for a gift over to any other person even if such child should die before attaining the age of thirty-five years. Since the intent is known, the next question to be determined is whether it is possible under the laws of this State to cause the property to vest and not suspend the power of alienation when the time of payment is postponed.

The rule against perpetuities in this jurisdiction is directed against both remoteness of vesting and the suspension of the absolute ownership of personal property. (*Matter of Wilcox*, 194 N. Y. 288.) The absolute ownership of personal property is illegally suspended where it is suspended by will or deed for more than two lives in being when the instrument became effective.

The absolute ownership of personal property is suspended improperly when it is impossible for persons in being to convey the full, absolute and immediate ownership and enjoyment of the personal property. Here it was the expressed intention of the settlor that, upon the death of the primary life beneficiary, title to the share of a child born after the creation of the trust was to vest in that child, subject to a power in the trustee to collect the income and pay it to such child until the child reached the age of thirty-five.

In other words, the child was to hold the title subject to a power in trust. Postponing the time of payment does not invalidate a trust the terms of which otherwise comply with the rules against the remoteness of vesting and the suspension of the power of alienation. (See *Matter of Burdsall*, 171 Misc. 822; *Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573.)

In the last cited case a testamentary trust provided for payment of income to a beneficiary for her life, and at her death to her children in equal shares until they reached the age of twenty-one years, at which time each child was to be paid his or her share. It was contended that the trust was invalid because its duration might be measured by lives not in being at the date of the testator's death. There were no provisions in the will for a gift over or any words of survivorship relating to the principal gift. The court held that an absolute gift was given to the children at their mother's death with merely the time of payment postponed and that this was entirely valid. On this point the court said:

" * * * if the gift is absolute and the time for payment only is postponed the gift is not suspended, but the title vests at once. While a great many authorities might be cited in support of this proposition it is sufficient to refer to *Matter of Embree* (9 App. Div. 602; affd., 154 N. Y. 778); *Dickerson* v. *Sheehy* (156 App. Div. 101; affd., 209 N. Y. 592) and *Cammann* v. *Bailey* (210 N. Y. 19, 30), where the leading authorities on this subject are reviewed.

" In the case now under consideration we think that the intention of the testatrix is clear that the gift of the residuary estate is absolute and only the time of payment or enjoyment is postponed." (See, also, *Matter of Carroll*, 274 N. Y. 288.)

At the death of Julia Tuck Firth the trustee will cease to hold the legal title to the property and absolute title will vest in the children surviving Mrs. Firth or the issue of deceased children. The duties to be performed by Bankers Trust Company will then no longer be executed by it as trustee. Whatever duties are imposed upon it from that time on will be executed by it as the donee of a power.

It would be illegal to attempt to suspend, by the use of a " power in trust," the absolute ownership of personal property for more than the statutory period, but the " power in trust " created by Edward Tuck's indenture does not violate the rule against perpetuities, since the restriction upon the right of alienation of the shares of the children born after the date of the indenture ceases immediately upon the death of Julia Tuck Firth.

Certain " powers in trust " do violate the rule against perpetuities. For instance, a power of appointment may not be exercised so that title will not vest, within the statutory period,

absolutely in a person who will have an unrestricted right to convey a fee absolutely. (Real Prop. Law, §§ 178, 179; Walsh on Future Estates in New York, pp. 160, 161.) A conveyance of property subject to a power of sale in a third person may suspend the power of alienation or absolute ownership if the power may be exercised during more than two lives in being. (*Matter of Butterfield*, 133 N. Y. 473.)

A power in trust such as the one created by Edward Tuck is not a trust in the strict sense of the word because title is vested in the beneficiary and not in a trustee. The beneficiary in such a " power in trust " has a remainder in fee plus the right to income until he reaches thirty-five years of age when he receives the fee. Assuming no disability of infancy he could at any time convey the fee and thereby terminate the power (See *Smith* v. *Edwards*, 88 N. Y. 92; *Steinway* v. *Steinway*, 163 id. 183.)

Since it was the clearly expressed intent of the settlor to terminate the trusts on the death of Mrs. Firth as to the shares for after-born children, the postponement of payment does not unlawfully suspend the power of alienation. The trusts as established and the remainders are accordingly valid.

II. In view of the disposition thus reached, it is unnecessary to discuss the second question raised on this accounting, namely, to whom the remainder would revert on the death of the primary life tenant if there had been an unlawful suspension of the power of alienation.

III. The account is approved as filed.

Settle findings of fact, conclusions of law and judgment.