In the Matter of the Accounting of EMMA L. GRAVES et al., as Executors of HARVEY B. GRAVES, Deceased.

Surrogate's Court, Monroe County, January 25, 1949.

*Byron A. Johnson, Jr.,* and *Truesdale Clarke* for executors, petitioners, and others.

*Earl F. Case* and *Joseph M. Feely* for Perry R. Smith, respondent.

*Hamilton C. Griswold* for Board of National Missions of the Presbyterian Church in the United States of America and others, respondents.

*Vilas M. Swan* for Rochester Community Chest, Inc., and others, respondents.

*Arthur Rathjen* for Clinton N. Howard, respondent.

*E. Reed Shutt* for Young Men's Christian Association of Rochester, New York, and others, respondents.

*Emmett J. Schnepp,* special guardian for Mary A. Alhart and others, infants, and for unknown persons, respondents.

WITMER, S. Construction of the will and codicil herein is sought, particularly to ascertain the time at which the value of the estate assets is to be taken in determining whether the estate is large enough under the terms of the will and codicil to entitle respondents to share therein. At the date of testator's death on January 14, 1936, the net value of his estate was $226,926.95, as shown by an appraisal made as of that date about a year later. No other appraisal has been made. The account herein, filed July 13, 1948, purports to show the acts of the executors from the time of their appointment on March 9, 1936 to September 30, 1947, and shows a principal value as of the latter date of $1,079,864.13 of which $107,665.50 is cash and the rest, to wit, $972,198.63, represents, for the most part stock in testator's corporations which the executors control. This stock is carried in the account at its value as of the date of testator's death for the reason stated therein by the executors that " These stocks are not traded in, consequently, no market value can be arrived at." Without doubt these stocks are worth much more today than they were thirteen years ago when evaluated, but no attempt has been made to determine their present value or their value at any time since the date of testator's death.

The testator provided (article " Fifth " of will) that one third of his stocks in two of his principal corporations be divided into six parts. He gave four parts to his four children, one to each, and he provided that the remaining two parts be placed in one fund and be paid in designated percentages, varying from 1% to 5%, to forty-eight individuals, charities and religious organizations. Many of the individuals were his employees or employees of his corporations. With respect to some of such shares he provided that they be held in trust for the individual beneficiaries for life, the remainder to be a part of his residuary estate. He requested that certain of the legacies to individuals be paid in stock of said corporations so far as possible, but did not make such provision mandatory. With reference to such legatees he said " if they receive the stock I desire them to regard the dividends as a Christmas present from Uncle Harvey."

Testator further provided (article " Sixth-A ") that all the rest and residue of his estate be divided into five equal parts. He gave each part to his executors and trustees in trust, the first four parts for his four children respectively for life, the fifth part to be divided into as many parts as testator left grand-

children him surviving, and one of such parts to be held in trust for each such grandchild respectively for life. Each life beneficiary was given power to appoint the remainder, and in default of appointment alternate provision was made for payment to certain of testator's other descendants.

The particular provisions of the will and codicil involved in this construction are:

First paragraph of article " Fifth " of will: " Provided the bequests to and trusts for the benefit of my four children shall amount to not less than One Hundred Thousand Dollars ($100,000.00) to each of them, I am, by this clause fifth of my will, going to take one-third of the stocks, both common and preferred, which I own in H. B. Graves Company Inc. and H. B. Graves Realty Company Inc. and divide them into six equal parts. When I refer to one of said equal parts I mean equal parts of the one-third of my stocks in said two corporations."

Last paragraph of article "Fifth " of will: " In the event that the bequests to and trusts for the benefit of my four children shall amount to less than One Hundred Thousand Dollars in value to each of them, I direct that none of the bequests mentioned in this clause Fifth shall be made."

Last sentence of article " Fourteenth " of will: " I direct that in the discretion of my executors that the appraised value of my estate, real and personal, may be determined at any time within five years from the date of my death and that such appraisal when made in the discretion of my executor within five years of the time of my death will determine the gross and net value of my estate for distribution and for the purposes of the legacies and trusts herein created."

Article " Fourth " of codicil: " I expressly direct that my four children shall receive equally the entire portion of my estate bequeathed in clause fifth of my said will, unless at the time of my death the net value of my estate shall be sufficient to insure that the portion received as bequests and in trust by each of my four children shall be not less than One Hundred Thousand Dollars of present day value or equivalent inclusive of the provision for their benefit in said clause Fifth. In making this provision I have in mind the uncertainty of values, particularly the result of inflation and am seeking to provide each of my four children with not less than One Hundred Thousand Dollars of present day value or equivalent."

The executors, two of whom are testator's children, and his other two children take the same position herein, and so as a

matter of convenience they will all be referred to as the " petitioners ". They urge that the time for fixing the value of testator's estate for all purposes, including distribution, is the date of death. So construed the respondents have no interest in this estate. Respondents on the other hand contend that the will legally provides that the net value of the estate be determined as of a date subsequent to the date of death, and that since no such determination has been had, an appraisal must now be made. They further contend that the account as filed conclusively shows that they have an interest in the estate, and that only the exact value of the estate and the shares of respondents remain to be determined.

The will was executed on November 29, 1934. The codicil was prepared, the court is informed, without the aid of an attorney, and was executed on May 28, 1935. These instruments show that the testator was greatly concerned " because of the special circumstance in connection with my (his) estate at this time." (Article " Fourteenth " of will.) The testator was a man of action and of large affairs. Both in the State of Florida and the State of New York he had experiences with periods of inflation and deflation. His many references in the will and codicil to the uncertainty of values, in view of the depression existing at the time of the execution of the two instruments and the complexity of his affairs, show that he did not wish to have the purposes of his will defeated by false values which might exist at the moment of his death. The fact that he so expressed himself on these two occasions within about a year of his death, cognizant as he was of his affairs and of the times, is very significant.

Petitioners argue that the quoted portions of the will and codicil reveal that testator had a primary concern for his four children, and that the rest of his will is secondary. To a certain extent, an extent expressly stated by the testator, that is true. Beyond that, however, I think it is clear that the testator wished to benefit respondents, many of them were his loyal employees and others were organizations in which he had a deep interest and in and for which he had devoted much time, effort and money during his life. He not only wished to benefit them for their own sakes, but felt an obligation to them. Moreover, there is a justifiably selfish motive in the gifts to the employees, which gifts he requested be made in stock of his corporations and that " they regard the dividends as a Christmas present from Uncle Harvey." It was one way — his way — of being remembered;

a sort of memorial which he might properly prefer to cold granite.

It cannot be said that these forty-eight individuals and causes were not of equal importance to the testator, in the proportions in which given, as were his children, provided his estate *at the time of distribution* should be sufficient to yield the minimum amounts which he required for his children. Nearly half of his will is devoted to the provisions for respondents. In article '' Fourteenth '', in an attempt to clarify his will, he states his '' testamentary scheme '', and reviews the provisions made for all of the beneficiaries without indication of preference. I think it is clear that it would do great violence to the testator's intentions to hold that the valuation of his estate, made *for tax purposes* as of the date of his death, should determine the distribution to be made.

Petitioners assert, however, that the language of the codicil requires such construction. That language is '' unless *at the time of my death* the *net value of my estate* shall be sufficient *to insure that the portion received* * * * by each of my four children shall be not less than One Hundred Thousand Dollars *of present day value or equivalent* * * * ''. (Emphasis added.) In article '' Fourteenth '' of the will, however, the testator provided, as quoted above, that his executors might determine the appraised value of his estate '' at any time within five years from the date of my death and that such appraisal *when made* * * * will determine the * * * value of my estate for distribution * * * purposes * * * ''. It is patent that in using this language testator was not thinking of the value of his estate at the time of his death. It is unthinkable that a business man of his caliber could have contemplated that his executors would need five years to appraise his estate as of the date of his death. His intent in this respect cannot be in doubt.

By express provision the codicil revokes no part of the will except insofar as the will is inconsistent with it. That provision conforms to the law applicable in the absence thereof. (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, 91.) The codicil must therefore be read in the light of the provisions of the will. It was intended to be explanatory thereof. The fact that the codicil was prepared by one unskilled in the law is important in considering its effect and testator's intention. (*Matter of Ward*, 63 N. Y. S. 2d 125, 129, affd. 271 App. Div. 1053.)

An ambiguity, or at least a provision which seems quite contrary to testator's intention, existed in the will with respect to what testator wished done with the first four parts of the one third of the stocks mentioned in article " Fifth ", in the event that the estate were insufficient to yield to each child the sum of $100,000. The last paragraph of article " Fifth " provides that in such event none of the bequests therein should be made. That would throw all of the estate into the residue, excepting the preliminary gifts made in articles " Second " and " Third ". It would thereby increase the gifts to the grandchildren and place all of the benefits for the children in trust. By article " Fourth " of the codicil testator cleared up that point, and, in such event, gave all of the property included in article " Fifth " in the will to his four children equally and absolutely. That evidently was the principal reason for article " Fourth " of the codicil. While making this correction the testator added a further precautionary provision with respect to fluctuating valuations, namely, that the value of his estate should " insure that the portion *received* " by his children would amount to a certain sum " of present day value or equivalent." (Emphasis added.) It is apparent, therefore, that his intention was not to alter the time for fixing the valuation as provided in the will, but that *when valued as provided therein* it should be sufficient to insure the minimum amount to his children " of present day value or equivalent ". Evidence that the codicil was inexpertly drafted is found in the fact that he failed to make provision in article " Fourth " thereof for the event of his children, or any of them, predeceasing him, as was provided in article " Fifth " of the will. The use of the words "at the time of my death" was also patently inexact and unintended.

The court cannot delete from a testamentary document words which have a clear meaning not in conflict with other provisions thereof. It cannot say that he meant the contrary to what he has clearly expressed. Where, however, the words appear to have been used carelessly or through inadvertence or ignorance and in contravention of the general scheme of his will and manifest intent, they may be disregarded. (*Matter of Tamargo,* 220 N. Y. 225, 231; *Matter of Merrill,* 208 App. Div. 649, affd. 239 N. Y. 517; *Matter of Warner,* 65 N. Y. S. 2d 70.) In *Matter of Merrill* (*supra*) the testator used the words " at the time of my death " (see p. 651 for language of will), but the court ignored those words in view of an express direction in the will that the legacy should not be paid until one year after testator's death.

Moreover, in the instant case a construction of the words " unless at the time of my death " as " unless after my death " would render it consonant with the will. Where such is the obvious intent, it is proper to make such change. (*Eidt* v. *Eidt,* 203 N. Y. 325; *Matter of Birdsell,* 271 App. Div. 90, affd. 296 N. Y. 840; *Matter of Ward,* 63 N. Y. S. 2d 125, 131, affd. 271 App. Div. 1053, *supra*). The codicil is so construed.

It is significant that the testator on various occasions spoke of the *net value* of his estate. It is clear that in the manner in which he used the words he was not contemplating a net *estimated* value to be fixed by the executors at a time long before the period of distribution. He undoubtedly considered himself as able to estimate as his executors. He was not contemplating a value which executors might employ in negotiating with estate tax collectors. Without doubt by net value of his estate he meant to describe the amount thereof as appraised by his executors which would remain for distribution at that time, taking into consideration the condition of the market, after the payment of his debts, funeral expenses and expenses of administration, (*Matter of Demmerle,* 130 Misc. 684; and see *Matter of Lorch,* 33 N. Y. S. 2d 157, 169; *Matter of Kelly,* N. Y. L. J. March 1, 1948, p. 778, col. 1.)

It being clear that the testator intended to grant to his executors the power to appraise his estate " at any time within five years from the date of (his) death and that such appraisal *when made* will determine the \* \* \* value of (his) estate for distribution \* \* \* purposes \* \* \*" (article " Fourteenth " of the will; emphasis supplied), is there any rule or policy of law which renders such provisions of his will ineffectual for the accomplishment of his intention? It is fundamental that in the absence of such prohibitory rule or policy, the testator's intention must be given effect. (*Matter of Merrill,* 208 App. Div. 649, 650, affd. 239 N. Y. 517, *supra.*)

Petitioners contend that under the language of the will and codicil the provision in article " Fifth " in favor of the respondents is contingent and that the vesting and power of alienation thereof, if dependent upon an appraisal to be made in a period of years, is illegally suspended, and hence the provision is void.

There are provisions of the will besides those above quoted which bear upon testator's intention and the question of vesting. Article " Sixth " of the will, for example, immediately following the provisions for respondents, provides in part as follows:

" In the event that any of the *above legacies* lapse or for any reason are declared invalid or for any other reason are not paid, then I direct that the amount *so given* shall pass in equal shares into which the remaining two-thirds of my estate are divided.

" I direct that my executors, in their discretion, may pay *legacies given* on a percentage basis, being the fifth and sixth portions *given above* in cash instead of in stocks, the amount of cash to be paid to be determined by an appraisal of the stocks of said two corporations, said amount, however, in no event to exceed par on said stocks. The appraisal may be made by my executors at any time within five years from the date of my death. My executors may withhold payment of *said legacies given* \* \* \* for a period of five years, or any part thereof, during which time if they do so withhold said stocks they will pay to the legatees above named *who take a per cent* of said fifth and sixth interest the dividends \* \* \*." (Emphasis added.)

The testator was making a present gift to respondents which vested in them on his death. The gift, to be sure, was subject to the result of the administrative efforts of his executors and to the determination of the value of his estate as provided therein. The condition that if the " net estate " should not be sufficient to insure the payment to the four children of $100,000 each, the gift should fail, was a condition subsequent, not precedent, to vesting. (*Matter of Dettmer,* 178 Misc. 401, affd. 266 App. Div. 877, affd. 292 N. Y. 688; *Matter of Wittner,* 193 Misc. 105; *Matter of Adler,* 193 Misc. 19.) In *Matter of Adler* (*supra,* p. 21) the testator said in his will: " If, after making or adequately providing for said payments, there shall remain any property " that it should be paid to named individuals in designated amounts and shares. Surrogate DELEHANTY there held that the gifts were vested subject only to the administrative acts of determining the shares, if any, for distribution.

" There are no technical words which indicate the difference between conditions precedent and subsequent, and the question is always one of intention." (*Booth* v. *Baptist Church,* 126 N. Y. 215, 242; *Matter of Herts,* 165 Misc. 738, 743; 2 Davids on New York Law of Wills, § 878.)

The entire plan of the will shows that the testator wanted respondents to have at his death a share, expressed in percentages, in his estate, subject to the executors' realizing a certain minimum amount. The fact that it cannot be determined promptly upon testator's death whether or not respondents are entitled to share under the peculiar provisions of the will, does not render the bequests contingent and is not fatal to them. The

rights vested, subject to being cut off during the period of administration if a combination of deflated values and large estate obligations reduced the net estate below a certain amount. It is significant that, as in *Matter of Adler* (193 Misc. 19, *supra*), the testator named each organization and individual whom he wished to share in this portion of his estate and stated the exact percentage of the gift, and in some instances showed a particular paternal interest in the legatees. (*Matter of Bates,* 272 App. Div. 559, 561; *Matter of Harrison,* 190 Misc. 215, 218; *Matter of Sutton,* 150 Misc. 137, 140; 4 Restatement, Property, Appendix, ch. A, par. 66.) The law will not impute an intention to postpone vesting unless such " intention is unequivocally expressed " and " can [not] be avoided ". (*Manice* v. *Manice,* 43 N. Y. 303, 368.)

There is considerable similarity between the provisions herein and the case where a testator gives $10,000 to each of A and B and gives the residue of his estate to A, B and C equally. In such case C's gift is subject to the practical condition subsequent that the distributable estate must exceed the amount of the general legacies as well as the debts and administrative expenses. But no one would contend that his interest, such as it might be, is not vested in him from the time of testator's death. We have substantially the same situation here, except that the executors are granted the right in their discretion within five years after testator's death to appraise the estate assets and then and there determine the rights of the legatees for purposes of *immediate* distribution, upon the basis of *such bona fide* appraisal.

The provision authorizing the executors to make an appraisal within five years is not illegal. At all times from the date of death there were persons in being who could convey respondents' interest (*Manice* v. *Manice,* 43 N. Y. 303, 365, *supra*; *Bankers Trust Co.* v. *Firth,* 177 Misc. 797, 801–802). There was no attempt to direct an accumulation of income herein during the period of administration, but on the contrary provision was made for its payment (article " Sixth "). The grant of time for appraisal did not deny to the executors the right to make the appraisal immediately. Its purpose was to extend the statutory period of administration. (Cf. *Matter of Demmerle,* 130 Misc. 684, 689, *supra*; 4 Restatement, Property, Appendix, ch. A, par. 66.) At the very worst it amounts to a postponement of the time for payment of legacies as a matter of convenience to and for the benefit of the estate. Such provision is quite proper. (*Matter of Hitchcock,* 222 N. Y. 57, 70–71; *Bushnell* v. *Carpenter,* 92 N. Y. 270; *Loder* v. *Hatfield,* 71 N. Y. 92; *Matter of Wittner,* 193 Misc. 105, *supra*; *Matter of Adler,* 193 Misc. 19, *supra*).

This principle is also invoked where there is a direction to executors to convey the estate assets to a corporation to be created, and operate the corporation for the benefit of designated persons, pay the profits to them and ultimately convey the stock to them (*Boyle* v. *Boyle & Co.,* 136 App. Div. 367, affd. 200 N. Y. 597; *Matter of Noll,* 157 Misc. 73, affd. 247 App. Div. 820); and in cases of a charitable bequest with direction that a corporation be created to carry out the purposes of the gift (*Hope* v. *Brewer,* 136 N. Y. 126, 134–135; *Maynard* v. *Farmers' Loan & Trust Co.,* 208 App. Div. 112, 116, affd. 238 N. Y. 592) and in cases of a charitable bequest upon condition that a designated corporation accept the gift within a stated period (*Matter of Dettmer,* 178 Misc. 401, affd. 266 App. Div. 877, affd. 292 N. Y. 688, *supra.*) The principle involved is further recognized in the cases where gifts are made to several named persons of several parcels of realty (*Matter of Turner,* 206 N. Y. 93; see *Manice* v. *Manice,* 43 N. Y. 303, 369, *supra*) or of designated bonds or other personalty (*Matter of Cook,* 193 Misc. 261) having different values, one to each, without specifying which devisee or legatee should receive a particular item. The gifts are held to vest upon the death of the testator, subject to an implied power of selection — an administrative detail.

The designation of the five-year period in which the executors might appraise the estate carries with it an inference that the executors should not take more than five years to determine the value. (*Deegan* v. *Wade,* 144 N. Y. 573, 576; *Matter of Morrissey,* 81 N. Y. S. 2d 576.) On the other hand, the failure of the executors to exercise their discretion and make, or have made, an appraisal for purposes of distribution within the five-year period does not vitiate their power to appraise it now. (Cf. *Mott* v. *Ackerman,* 92 N. Y. 539, 550–551.) Indeed, since two of the executors are also two of the four children entitled to 80% of the residue of the estate, it seems highly unconscionable that through their failure to make an appraisal as contemplated by the will, they should be able to defeat the rights of the respondents to share in the estate and thereby gain such share for themselves and their two sisters.

In construing this will and codicil we cannot, of course, take into account events occurring and conditions existing after testator's death. (*Herzog* v. *Title Guarantee & Trust Co.* 177 N. Y. 86, *supra*; *Matter of Gordon,* 183 Misc. 567, 571.) But it is apparent from these documents that the testator contemplated several situations which might occur, including the

very situation which has occurred. Testator sought to protect all of his legatees — his children in the event his estate yielded an amount below a certain figure, the respondents as well as his children if it exceeded such figure. And, while respondents were to benefit if the estate yielded more than the designated minimum and stood to gain more as the estate yielded more, for each additional dollar which respondents might receive, petitioners would receive several dollars. Apparently they are not content with such beneficence of the testator, for in this proceeding they seek to eliminate respondents completely, and remake testator's will and defeat his purposes.

Consider a reverse status of the estate. Suppose the tax appraisal showed the estate to be worth $1,000,000. Under petitioners' theory respondents would then be absolutely entitled to share in the estate. If, however, an appraisal made within five years of the date of death and at the time of distribution showed the estate to be worth less than $400,000, clearly it would violate testator's intention to permit respondents to share. This points up the fact that the gift to respondents was vested subject to a condition subsequent which might defeat their interests.

The situation is to be distinguished from the cases in which the testator makes provision for a legacy and provides for its payment over in the event of the death of the legatee before receiving the legacy, where it is found that the testator intended that the legacy be contingent upon the legatee's receiving the bequest. In such cases, as a matter of public policy in order to keep from the executor the power to determine by his acts who gets the legacy, it is held that the contingent gift vests at the termination of the minimum period for administration, if the gift has not been sooner paid. (*Matter of Merrill,* 208 App. Div. 649, affd. 239 N. Y. 517, *supra*; *Matter of Grieve,* 186 Misc. 601; *Matter of Werner,* 142 Misc. 702; *Matter of Denton,* 46 N. Y. S. 2d 145; *Matter of Chatfield,* 194 Misc. 197.) In the instant case the gift to the respondents was vested, but the gift over to petitioners of a fraction of the estate was conditional upon the estate yielding less than the designated sum. (Last paragraph of article " Fifth " of will and article " Fourth " of codicil.) The matter of public policy which enters into the limitation of time for vesting the legacy in the cited cases is not present in this case with respect to respondents because their interests are vested. Under the terms of the will their interests are subject only to being cut off by a bona fide appraisal, made within five years for purposes of immediate

distribution at the time thereof, showing that the estate is insufficient to pay the minimum sums to the children. And even if the net value of the estate were reduced as above supposed, with respondents entitled to a share at testator's death but because of reduced valuations their share is divested at the time for distribution, still the matter of public policy involved in the cited cases would not enter. For in those cases by mere delay the fiduciaries might eliminate a legatee, whereas here the testator and legatees are protected by the requirement of a bona fide determination of net value of the estate, and the beneficiaries had the right to require such appraisal at the end of the five-year period.

Conversely, upon the facts in this case where under the tax appraisal it appeared that the four children would be entitled to all of the property described in article " Fifth " of the will, that event was contingent upon the distribution and the results of an appraisal to be made by the executors for such purposes within the five-year period. The parties are not at the mercy of the whim or caprice of the executors in this respect, as in the cited cases, because their determination must be based on bona fide values. Their only discretion is as to the time of making the appraisal within the five-year period.

There is no claim or showing that the rights of the children have been prejudiced by failure of the executors to appraise as provided in the will; and the two of them who are executors have little right to make such claim. Respondents are content to have a present appraisal.

Respondents are entitled to have the executors make, or cause to be made, an appraisal for distribution purposes forthwith, as of the date of appraisal. The decree to be entered hereon may so provide, and direct that from such appraisal the executors determine whether or not the net value of the estate is sufficient " to insure that the portion received as bequests and in trust by each of my (testator's) four children shall be not less than One Hundred Thousand Dollars of present day (May, 1935) value or equivalent "; and may further direct that, in any event, following such appraisal and determination, the executors forthwith file a supplemental account herein, showing their contemplated plan of distribution in view of such appraisal.

Submit decree accordingly.