ANNA GERTRUDE OLIVER, Plaintiff, *v.* KATHERINE M. WELLS, Individually and as Executrix, etc., of DAVID A. WELLS, Deceased, and Others, Defendants.

Supreme Court, Fulton County, October 9, 1929.

Wesley H. Maider, for the plaintiff.

Jeremiah Keck, for the defendant Katherine M. Wells.

Alfred D. Dennison, for the defendants Edward Wells and others.

Fred. Linus Carroll, for the defendant John E. Wells.

John M. Carroll, for the defendant Elsina M. Wells.

F. Law Comstock, for the defendants James Oliver, 2d, and others.

HEFFERNAN, J. David A. Wells died on May 8, 1928. He left no children or descendants thereof. His widow, a defendant, his sister, the plaintiff, and his nephew, the defendant John E. Wells, are his only survivors. He left a last will and testament dated July 22, 1927, in which the widow is named as executrix, which has been duly probated, and which disposes of an estate, consisting of real and personal property, of an approximate valuation of $1,000,000.

The object of this action is to obtain a judicial construction of the instrument, and to determine the rights, interests and obligations of the parties to the suit thereunder. All answering defendants unite in the prayer for relief. The facts are established by stipulation and by admissions contained in the pleadings.

In her complaint plaintiff asserts the invalidity of certain trust provisions. If her contentions are sustained, judgment must follow that her brother died intestate as to the greater portion of his estate. Incidentally is involved the question whether the widow may continue to reside in the old homestead.

The will contains many clauses which have no bearing on this controversy, and hence no reference is made to them. After directing the payment of his debts, and making various provisions for intended recipients of his bounty, including an absolute gift to his wife of the sum of $100,000, testator disposed of the residue in the following manner:

" Seventh. I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of every name, kind, nature and description, wheresoever situate, unto Edward Wells of the City of Johnstown, and, in the event of his death

either before my death or afterwards, then to The Peoples Bank of Johnstown, N. Y., as his successor, in trust, to and for the uses and purposes following: To invest and re-invest the same and to pay the interest and net income thereof, and the rents and income from any real estate of which I may die seized and remain unsold, to my said wife, Katherine M. Wells, so long as she may live, and upon the death of my said wife, I give and bequeath the sum of. $10,000, of my said estate unto the said Edward Wells or to his successor, as aforementioned in trust, to invest and re-invest the same and to pay the net income thereof to the Johnstown Cemetery Association for the perpetual care of the Gilbert, Wells and Johnson lots and to place flowers upon the graves in said lots every Saturday between May first and October first in each and every year, and in the event of the failure of said association to properly care for said lots or to place the flowers thereon as above directed, then I direct the trustee aforementioned to cause the same to be done.

" The remainder of my said estate to be divided into Fifteen equal parts, and I give, devise and bequeath the income thereof in manner following, viz.: One-fifteenth part to my nephew, John E. Wells of Johnstown, N. Y., for and during his life, providing that he and my sister consent and agree to the use and occupancy of the real estate and the payment of the income of the Chicago & Northwestern Railway stock to my wife as hereinbefore provided; Another one-fifteenth part thereof to Gertrude S. Ackerknecht of Johnstown, N. Y., for and during her life; Twelve-fifteenths thereof to Gertrude Katherine Ackerknecht, daughter of Gertrude S. Ackerknecht, so long as she may live, and during the minority of said Gertrude Katherine Ackerknecht such income to be paid to her general guardian; One-fifteenth part thereof to Mary Ackerknecht, daughter of Gertrude S. Ackerknecht, so long as she may live, and during her minority such income to be paid to her general guardian; in the event of the death of any or either of the said beneficiaries, the income from the share or interest of said beneficiary to be paid to the surviving beneficiaries aforementioned, and upon the death of the last surviving beneficiary the principal shall become a part of my residuary estate and be distributed as provided in the residuary clause of this my last will and testament; and I do hereby nominate Edward Wells, or in the event of his death, the Peoples Bank of Johnstown, N. Y., to be such general guardian for the purpose of receiving and expending the aforesaid income and to use the same for the care, support and education of the said Gertrude Katherine Ackerknecht, and the said Mary Ackerknecht during their minority.

" *Eighth.* I hereby give, devise and bequeath all the rest, and residue of my estate to my sister, Anna Gertrude Oliver, and to

her heirs forever, upon condition, however, that she and the said John E. Wells consent to the use of the income of the Chicago & Northwestern Railway stock and the use of the real estate by my wife as hereinbefore provided; and in the event my said sister and nephew do not so consent, then I give and bequeath the same to my said wife, the same to be hers and her heirs forever, this clause to be construed and considered as the residuary clause of this my last will and testament."

Plaintiff and the defendants united in interest with her contend that the trust created by the testator in the 7th paragraph is void and that it violates provisions of our statutes against perpetuities. (Real Prop. Law, § 42; Pers. Prop. Law, § 11), because of the unlawful suspension of the absolute power of alienation and absolute ownership for a longer period than during the continuance of more than two lives in being, viz., five lives. The sister and the nephew also attack the legality of the condition attached to the testamentary dispositions in their favor. The trust for the care of cemetery lots, although perpetual, is not objectionable. (Real Prop. Law, § 114-a, as added by Laws of 1909, chap. 218; Pers. Prop. Law, § 13-a, added by Laws of 1909, chap. 218, as amd. by Laws of 1911, chap. 430.)

All the beneficiaries survived the testator, and are parties to the action. Those beneficiaries named in the 7th paragraph, other than the Johnstown Cemetery Association, are his nephew, his widow, and the latter's niece and grandnieces, who were not related by blood to him.

The main question in this case is whether the testator meant to create a single trust enveloping the interests of all the beneficiaries until the death of the last survivor, or whether he intended to create five separate trusts, each to be measured by its own terms and having its own purposes to accomplish. If the trust provision is inseparable, and must necessarily continue as to the entire property, without distribution, until the death of all the beneficiaries, it clearly suspends the absolute power of alienation of real property, and the absolute ownership of personal property for more than two lives in being at the death of the testator, or even two lives in being plus a minority. In order to make the will effective if possible, the court is in duty bound to reject that construction if any fair and reasonable interpretation of testator's language warrants such a determination. Each will must be considered with reference to its peculiar provisions and testamentary interests, and precedents are of little avail. According to well-settled principles of testamentary construction, if two or more interpretations are reasonably possible, the one that will sustain the validity of the will is to be preferred, generally speaking, to the one that will defeat it.

The solution of the pivotal problem requires no exploration into the state, or character or source of the assets of the testator, beyond the fact that he left both real and personal property, nor is it necessary to inquire into his relationship to the parties who are the objects of his bounty. It is only necessary to scan his will to ascertain his intention in regard to the principal of the trust fund. It is quite apparent to me that testator's widow, her nieces, grandnieces and his nephew, were the chief objects of his solicitude. Evidently his primary intent was to give the income of his estate to his wife for life, and after her death to the beneficiaries named in the proportions stated, during their lives respectively. Undoubtedly that was his plan, and those were the things that seemed to him vital and essential. The question is whether this purpose has been accomplished.

The parties seeking the destruction of the instrument so far as the trust provisions are concerned, argue that but a single, individual and inseparable trust is created. In support of this claim they stress the fact that the trust provisions are contained in a single paragraph; that after the death of the widow the fund is continued in the hands of the trustee with directions for the disposition of the income; that exclusive of the provision for the care of cemetery lots " all the rest, residue and remainder " of his estate is given to his trustee to hold and invest, and to pay over the income thereon until the last survivor of the five beneficiaries shall have died, upon the happening of which event it is to become a part of his residuary estate, and be distributed as provided in the residuary clause.

It is true that nothing is explicitly said about the division of the estate into separate trusts. Testator was a business man and not a lawyer. It may be said, perhaps, that he failed in making nice grammatical distinctions in the language he used. I am convinced, however, that he intended five separate trusts for the beneficiaries concerned. The fact that the trusts were to be kept in one fund does not demonstrate conclusively that but a single trust was intended. The interests carved out of that fund are separate and distinct, and the will should be construed as though in terms it had created a trust for each beneficiary. That the trust fund is to be kept entire during the lifetime of the widow does not indicate its non-separability thereafter. A trust may be kept *in solido* for purposes of administration and yet be separable. Here, however, the testator has used unmistakable language to indicate a separation of the trusts after the death of the widow. When that occurs he directs: " The remainder of my said estate to be divided into fifteen equal parts * * *." A definite fractional part is thus allocated to each beneficiary. Speaking of the

death of any beneficiary, he provides that " the income from the share or interest of said beneficiary to be paid to the surviving beneficiaries * * *." He might legally create trusts, *first*, in the whole fund for the life of the widow, and *second*, in fractional parts for the life of one beneficiary as to each part. Disregarding for the moment the provision for cross-remainders it seems reasonable to say that the testator contemplated, not one trust running for five lives, but five separate trusts, the principals of which were to be held together solely for the purposes of investment; that for the widow to be measured by her own life, and each of the remaining four for two lives. Adopting this view no share can be held beyond two lives in being. The utmost period of suspension of the ownership of any part of the estate will thus be the lives of the widow and one beneficiary, a period within the statute. Upon the death of the widow, and after the payment of the amount directed for cemetery purposes, the remainder is to be divided into fifteen distinct parts. Each of the beneficiaries will receive the income of the fractional part allotted, and when death occurs each share will be liberated. Upon the death of any one of the four the trust as to such beneficiary ends, and the principal falls into the residuary estate. This done, the will, in this respect, can be sustained.

The clause providing for cross-remainders upon the death of any of the four beneficiaries, and the subsequent clause that distribution shall not occur until the death of the last survivor, are unquestionably invalid. It is obvious, however, that the provision for cross-remainders is merely incidental. In the words of Chief Judge CARDOZO in *Matter of Horner* (237 N. Y. 489) this provision " is so subordinate in importance and so separable in function, that we are at liberty to cut it off and preserve what goes before." By eliminating the objectionable parts a workable will remains. What was uppermost in the testator's mind undoubtedly was the provision for the original life estates. The trust for the widow, and the trusts, each for life, for the other four persons who most appealed to his bounty, were doubtless testator's most solemn concern. It is only logical to suppose that he could contemplate with unconcern a long deferment before the principal of the trust, or any part of it, should pass under the residuary clause, benefiting heirs to him, no doubt, unknown, and in whom he had no immediate interest. Intensely interested in the original life estates, little interested in the cross-remainders, yet even less interested in the time of ultimate distribution, it is obvious that he was not reluctant to indefinitely postpone final division. True, it is a weighty responsibility to speculate upon the comparative force of motives manifested in a will for the purpose of remolding it ever so slightly in the light of them. Yet it is a far, far graver responsibility to

strike down what we are bound to assume was precious in the sight of testator, because of the presence of some instructions of only trivial importance. There is abundant authority for judicial surgery in such a situation. (*Wells* v. *Wells*, 88 N. Y. 323; *Vanderpoel* v. *Loew*, 112 id. 167; *Matter of Colegrove*, 221 id. 455; *Matter of Horner, supra; Matter of Trevor*, 239 N. Y. 6; *Matter of Gallien*, 247 id. 195.) As was said by Lord HOBART in *Malverer* v. *Redshaw* (1 Mod. 35; 86 Reprint, 712): A judge is not to be like a tyrant, making all void when part is void; but like a nursing father, making void only that part where the fault is and preserving the rest if he can.

Counsel for the trustee and the beneficiaries other than the widow and nephew, takes the position that the 7th paragraph does not create a trust beyond the term of the widow's life, except for cemetery purposes, and that upon her death the other beneficiaries take life estates in fractional parts. In this it seems to me he is mistaken. That the testator intended that his estate should remain in the exclusive control of his trustee during the lives of the various beneficiaries, is clearly to be implied from the purposes expressed in the will. These purposes can be effected only in the mode directed, and the legal estate must necessarily continue so long as the objects of the trust remain unperformed. The duration of the trust is not limited to the life of testator's wife. The provision that on her death a specific sum shall be invested and the income paid to the Johnstown Cemetery Association, and the balance divided into certain parts, manifestly implies that the trust is to continue for the purpose of receiving and dividing the income which may thereafter accrue. There is also a direction for the payment over to the surviving beneficiaries of the share of any beneficiary dying, a provision wholly inconsistent with the suggestion that the trust will terminate on the death of the wife. This is necessarily a direction to the trustee to whom the fund has been given, and implies that it is to remain in his hands after the death of the wife, for the purposes of the will.

The question remains as to the legality of the condition attached to the devise and bequest to the sister and nephew. In order to understand the intention of the testator and the effect of these provisions of the will, an analysis of his interests in the real property and the shares of railroad stock is necessary. Evidently he was under a misapprehension as to the nature and extent of his ownership. At the time of his death he was the record owner of four-sixths of the real estate. The plaintiff and defendant Elsina M. Wells each owned a sixth. Testator had the title to the railroad stock. His estate, however, rested under certain obligations with respect to both properties, imposed by agreements between himself and his mother, who died in 1909. These agree-

ments required him to pay to his mother, or to her representatives, a certain portion of the proceeds of the sale of the real estate and a sum equal to the value of the railroad stock, or the proceeds thereof, in case of a sale. The real property and the railroad stock were never sold. Under the will of testator's mother, plaintiff and defendant John E. Wells are entitled to certain interests in the proceeds of the real and personal property under discussion. Defendant Elsina M. Wells, who is the owner of a one-sixth interest in the real estate, is not a beneficiary under the will of testator and is under no duty to consent to the use of her property by the widow. Excepting her one-sixth in the real estate, however, plaintiff and defendant John E. Wells have every actual right and beneficial interest in both species of property which were not possessed by the testator.

In the quoted paragraphs of the will, testator requires that his sister and his nephew shall consent that his widow may have the income from the railroad stock and the use and occupancy of the homestead property for life. Their bequests are contingent upon compliance therewith. Plaintiff and defendant concur in asserting that this condition is void. They disagree, however, as to the result. The former insists, if she is successful in her attack on the trust provisions, that she is entitled to the residuary estate free from the conditional provision. The argument is advanced in the brief of the latter that the provisions of paragraph 8 fall with the trust provisions of paragraph 7 upon the theory that the requirement in the latter paragraph is a condition precedent, and that where a condition precedent is illegal or void, the devise or bequest contingent thereon fails. The cases cited in support of this principle are from other jurisdictions, and are contrary to the rule in this State. (*Matter of Haight*, 51 App. Div. 310.) Although much has been said on the subjects in the briefs, it seems to me to be wholly immaterial whether the condition referred to is precedent, concurrent or subsequent.

Both contestants join in the argument that because defendant Elsina M. Wells has a beneficial interest in the real property, and is obligated in no way to assent to the use of the same by the wife, the condition annexed to their legacies is futile, useless and unenforcible. The mere fact that the desire of testator is incapable of effectuation does not *ipso facto* render void the condition imposed. Generally speaking, a testator has the right of absolute disposal of his property, coupled with the right to impose on his beneficiaries any conditions he pleases, unless they are opposed to public policy or illegal.

Plaintiff urges that the condition is also void because against public policy. The requirement that in order to receive a bequest

the grantee shall relinquish some definite property right and likewise procure another to do so, affects no public interest and contains no taint of illegality. Public policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public, or against the public good, which may be designated, as it sometimes has been, the policy of the law or public policy in relation to the administration of the law. (13 C. J. 425.) In all systems of law immoral conditions, conditions to omit a duty or against law or public policy, are void. This was so in the Roman law and is still so wherever the civil law obtains. The common law governing legacies and testamentary gifts in this respect is substantially a restatement of the Roman law without much, if any, variation. The application alone is new.

It is clearly to the interest of the public that all persons of full age and competent understanding shall have unrestricted freedom in making contracts, and that such contracts when freely and voluntarily made shall be enforced by courts of justice. Performance on their part of the conditions annexed to the gift is not impossible by these parties, and is not illegal as involving *malum prohibitum* or *malum in se*. If compliance with the condition should become ineffectual because of the act of another, that would not operate to deprive plaintiff or defendant of their estate. Their interest in testator's property would not be thus defeated. They should not be permitted to repudiate the condition, while insisting on the gift. In my judgment the condition is valid and should be upheld.

Finally, it is urged that the devise and bequest directly to the widow under paragraph 8, in case of failure of the gift to plaintiff, is repugnant to the previous devise and bequest of the same property to the trustee for the benefit of the widow as long as she lives. As I view it there is no inconsistency. Upon the failure of the gift to plaintiff, the widow would take an estate in remainder, subject to the precedent trust estate. By such acquisition she would acquire a future estate dependent upon the precedent estate of the trustee, but which she could not enjoy in possession. She might devise it, but could not possess an estate conditioned upon her own death. The trust estate is not destroyed because she is thus vested with a remainder. There is no merger of estates. She has no interest in that which is vested in the trustee for her life. The entire trust estate is vested in the trustee for trust purposes. The necessity for the maintenance of the trust would remain in full force notwithstanding the widow's succession to the rights of the plaintiff and defendant John E. Wells.

Findings may be presented in accordance with these views, with costs to all parties appearing payable out of the estate.