In the Matter of the Will of PAUL BOTTENWIESER, Deceased.

Surrogate's Court, New York County, December 26, 1944.

*Arthur B. King* for Jacques Mayer and others, as executors, petitioners.

*Abraham L. Bienstock* for Arnold Seligmann, Rey & Co., Inc., respondent.

*John W. Hannon,* special guardian for Claudette Pohl and others, infant legatees.

FOLEY, S. In this executors' intermediate accounting a construction of the will is sought to determine the effect of the provisions in the will requiring certain beneficiaries to appear personally at the office of the Fifth Avenue Bank of New York, the corporate trustee, to receive their legacies.

The beneficiaries reside in England. The questions presented for determination are: May they be paid their legacies outright without the necessity of traveling from England to New York? Or is their personal appearance in New York at the bank a condition attached to the legacies which must be obeyed?

The testator died on March 12, 1942. The testator formerly lived in Germany. He clearly intended to guard against confiscation by the Nazi regime. By subdivision e of paragraph seventh of his will the testator disposed of 25% of his residuary estate in trust for his sister-in-law, Madge Bolton. The pertinent provisions of the will for her benefit read as follows: "To invest and reinvest the same and to collect and receive the rents, income and profits arising therefrom and to pay over the net income therefrom to my sister-in-law, MADGE BOLTON, during her lifetime or until such time as she may present herself in person at the office of my corporate trustee, hereinafter named, at which time, upon her written request delivered to my trustees then in office, the said trust shall cease and terminate and the principal of the trust fund, together with any accumulated income therefrom, shall be paid over to her.

"If the said MADGE BOLTON shall predecease me or if she shall survive me, but shall die before receiving the principal of said trust fund, then upon my death, or upon her death, as the case may be, my trustees shall hold or continue to hold said fund and shall invest and keep the same invested and collect and receive the income therefrom and shall pay over the net income therefrom to my nephew, ALWYN BOLTON (son of the said Madge Bolton) if living, during his lifetime or until such time as he may present himself in person at the office of my corporate trustee, at which time, upon his written request delivered to my trustees then in office, the said trust shall cease and terminate and the principal of the trust fund, together with any accumulated income therefrom, shall be paid over to him.

"If the said ALWYN BOLTON (1) shall predecease me or (2) shall predecease the said Madge Bolton, she having survived me, or (3) shall survive the said Madge Bolton she having survived me, but shall die before the principal of said trust fund has been paid over either to her or him, as above provided, then,

in the first or second of said events, upon the death of the said Madge Bolton before the principal of said trust fund has been paid over to her, or in the third of said events, upon the death of the said Alwyn Bolton, as the case may be, the principal and accumulated income of said trust fund shall be paid over as follows:'' Then followed a gift over to named individuals.

Subdivision f of the same paragraph contains a gift of 12% of the residuary in similar terms for the benefit of a cousin, Grete Salinger, with a secondary gift in like terms to her husband, Eric Salinger.

The third and fourth paragraphs of the will contain legacies in specified amounts with similar provisions requiring the legatee to appear at the office of the corporate trustee. The eight legatees named in these paragraphs were living in Cannes, France, at the time the testator made his will. Seven of them were French citizens and the other a Belgian citizen. Legacies under the third and fourth paragraphs of the will are not involved in the question now presented and reference to them and the facts respecting the legatees is made merely in clarification of the intent of the testator in requiring certain legatees to present themselves at the office of the corporate trustee.

On July 15, 1941, the date of the execution of the will, the beneficiaries here involved, Madge Bolton, Alwyn Bolton, Grete Salinger and Eric Salinger resided and since that time have continued to reside in London, England. When the will was executed, France, while not entirely occupied, was under the domination of Germany. Under the terms of the will there must have been a possibility in the mind of the testator that England might be invaded by Germany. It is clear from a reading of the entire provisions of the will and from the extrinsic evidence submitted to the court that the requirement of personal appearance of the legatees at the office of the corporate trustee was inserted in the will by the testator to prevent the legacies from falling into the hands of the German authorities. It is equally clear that the testator intended Madge Bolton and Grete Salinger to receive vested interests in his estate. The limitation was not intended by the testator as a condition precedent to the vesting of their gifts but was inserted in the will merely as a precautionary measure to insure that they would actually receive the funds. The limitation is clearly a condition subsequent. Because of the present unsettled world conditions, it is impossible for the beneficiaries in England to appear personally at the office of the corporate trustee. The danger, however,

of their not being able to receive and enjoy their legacies in England no longer exists.

The general rule of law respecting a literal compliance with a condition subsequent that has become impossible by reason of circumstances over which the beneficiary has no control is stated in David on New York Law of Wills (Vol. 2, § 883, pp. 1427-1428) as follows: '' Where, however, a literal compliance with the condition has become impossible by reason of circumstances over which the devisee or legatee had no control, and through no fault on his part, he is held to be entitled to take the gift,—the condition imposed by the testator being deemed to be satisfied by performance as nearly as possible, or *cy près*. This modification of the uncompromising rule of the common law is derived from the civil law, and is based upon the assumption that the testator did not intend to require impossibilities, but only a substantial compliance with his directions.''

This rule has been applied in several cases in this jurisdiction. (*Matter of Jacobs,* 269 N. Y. 588, modfg. 244 App. Div. 161, which revd. 150 Misc. 381; *Burns* v. *Clark,* 37 Barb. 496; *Matter of Costalo* [*Costello*], 167 Misc. 755.)

Similar provisions requiring the personal appearance of a legatee before the estate fiduciary in order to receive payment have been considered by the English courts. In *Tanner* v. *Tebbutt* (2 Y. & C. 225) the will devised property to three daughters of an uncle of the testatrix or their issue upon the express condition that the beneficiaries appear personally before the executors and deliver to them testimonials of their or his identity. In default thereof, there was a devise over of the estate. It appears that a daughter of the uncle was aged and infirm and unable to make the journey and appear personally before the executor. One of the executors, however, and a business associate of the other executor personally went to the home of the beneficiary and received proof of her identity. It was asserted that since the condition was not literally complied with the gift over took effect. In sustaining the gift the Vice-Chancellor said (p. 229): '' Whether the executors could or could not delegate their judgment of the validity of the testimonial it is not necessary to decide. But I apprehend that the act of appearance was an act not necessary to be done before the two executors in their own proper persons: it might, in my opinion, according to the true construction of the will, be done before one of the executors accompanied by an agent of the other executor; especially when it is considered how many circumstances

might have arisen, if a strictly literal construction of the will were adopted, to disappoint the intention of the testatrix; for instance, suppose the claim had been made by the issue mentioned in the will, and the issue had been infants; could it have been contended that this Court could not dispense with the delivery of a testimonial of identity by the infants? ''

In another English case (*In re Bird, Bird* v. *Cross,* 8 Rep 326) the testator disposed of his estate equally among his children. In respect ·of the son, John, the will provided that if he did not return to England within three years of the testator's death, appear personally before the trustees and identify himself, his share was to be distributed among the other children. The son John did not comply with this condition. It appeared that he had gone to Australia in the lifetime of the decedent and that about a year after the testator's death he was placed as an insane patient in a hospital in Australia where he remained at the end of the three-year period from the testator's death. There was proof that during said three-year period he could have returned to England. The gift to the son John was nevertheless sustained. His failure to comply with the condition was held not to debar him from receiving the gift. The court held that the condition had ceased to be operative and the legacy was payable to the son.

I hold, therefore, that a literal compliance with the condition subsequent is unnecessary and that the legatees under subdivisions e and f of the seventh paragraph of the will are entitled to payment of their legacies. The dominant desire of the testator that the beneficiaries actually receive and enjoy the bequests will be assured since two of them have been appointed administrators of the assets of the estate located in England. It mav he feasible in aid of administration to apply the assets in their hands toward the legacies to the residents of England.

(Other directions included in the original decision of the Surrogate are omitted because of their subordinate importance.)

Submit decree on notice construing the will and settling the account accordingly.