In the Matter of the Construction of the Will of THORVALD MAIJGREN, Deceased.

Surrogate's Court, Monroe County, February 18, 1949.

*Earl F. Case* and *Joseph M. Feely* for Lincoln Rochester Trust Company and another, as executors of Thorvald Maijgren, deceased, petitioners.

*Arthur V. D. Chamberlain* for Arthur H. Wagner and another, respondents.

*Thurston Corbett* for Therese K. Maijgren, respondent.

WITMER, S. In this construction proceeding instituted by the executors the question of the validity of a condition attached to specific bequests of testator's stock in the Electro Surgical Instrument Company is raised. The testator gave one third of his net estate in trust for the benefit of his wife, respondent Therese K. Maijgren, with power to her to appoint the remainder of such trust. He provided that none of his stock in the Electro Surgical Instrument Company should be placed in this trust. He gave his stock in said corporation as follows: two thirds to respondent, Arthur H. Wagner, and one third to respondent, Ann Schoenhals; and he provided that if one of them predeceased him, the survivor should take it all; and he made such gift of stock subject to the condition that the corporation cancel testator's indebtedness to it. The residue of his estate he gave to his three children equally.

The condition attached to the bequest of the stock to the specific legatees was as follows:

" As a condition to the gift of the capital stock of the Electro Surgical Instrument Company herein given, I will and direct that all balances on the books of the Electro Surgical Instrument Company against me be cancelled, and I hereby implement the above request to have all balances existing in favor of the Electro Surgical Instrument Company against me cancelled in the following manner:

" I request the corporation immediately on my death to pass a resolution cancelling all indebtedness against me and my estate. To further implement my wish that the said indebtedness be cancelled, I direct that the legacy of the stock of said Company giveen (*sic*) herein shall not become effective until the indebtedness is cancelled. If all indebtedness in favor of the corporation against me or my estate is not cancelled and released within one year of the time of my death, then the legacy of the capital stock as herein given shall be of no effect whatever, and instead of the same I direct that the said capital stock shall remain a part of my general estate."

It appears that at testator's death said Arthur H. Wagner was a director of the Electro Surgical Instrument Company and still is a director thereof, and that within a month following testator's death, and on May 5, 1948, the surviving directors elected said Ann Schoenhals director to fill the vacancy caused by testator's death. The new directors thereupon at said meeting adopted the following resolution (Ex. 5): " Whereas, Arthur H. Wagner and Anna Schoenhals are legatees under the

last Will and Testament of Thorvald Maijgren, by the terms of which they are bequeathed all the stock of the Electro Surgical Instrument Co. owned by Mr. Maijgren at the time of his death, said bequest being conditioned upon the corporation immediately extinguishing any and all indebtedness from Thorvald Maijgren to the corporation at the time of his death, and

" Whereas, there appears upon the books of the corporation an indebtedness from the late Mr. Maijgren to the corporation in the sum of *$37,184.51.*

"Now, therefore, be it

"Resolved that the indebtedness of Thorvald Maijgren to the corporation be and the same hereby is cancelled and written off and the Secretary be and she hereby is authorized, empowered and directed to make such proper entries upon the books of the corporation as to give full force and effect to this resolution and authorize Arthur Wagner the President to deliver a formal release therefor."

The evidence shows that at the date of testator's death there was sufficient cash of the corporation on hand to pay all of its debts, but that a cancellation of the testator's debt to the corporation would result in an impairment of the capital of the company. At the testator's death there were 280 shares of capital stock outstanding, all common, of which the testator owned 279 of record and respondent, Therese K. Maijgren, owned one. By decision of this court (See *Matter of Maijgren,* 193 Misc. 814) 119 additional shares in the name of the testator were held to belong to said Therese K. Maijgren, through *inter vivos* gift. She has filed in this court her consent to the cancellation by the corporation of testator's indebtedness to it and her consent to the filing with the Secretary of State of an amended certificate of incorporation reclassifying the shares of stock of the corporation to avoid any impairment of its capital by reason of the cancellation of testator's said debt.

The specific legatees contend that the condition attached to the gift of stock to them is illegal, amounts to a forfeiture and is void, and that they are entitled to the stock absolutely free from the condition. They support their argument with the claim that the condition is subject to the control of a third person or persons who have an interest in opposition to that of said beneficiaries, and that the enforcement of the condition is contrary to public policy. They further state that the cancellation of the testator's indebtedness amounts to payment of a substantial dividend to stockholders out of capital, resulting in an impair-

ment of the corporation's capital in violation of law. (Stock Corporation Law, § 58.) They rely particularly upon the decisions in *Matter of Liberman* (279 N. Y. 458); *Matter of Bottenwieser* (185 Misc. 1023) and *Matter of Dettmer* (176 Misc. 512).

If the condition contained in this will be precedent, the stock could not vest in the specific legatees until the condition be performed. In that case such legatees would not be able as stockholders to influence the acts of the corporation; the stockholders could promptly remove them as directors; and the specific legatees could not then have the corporation cancel the testator's indebtedness to it. They contend that, with the condition viewed as one precedent, the executors and residuary legatees control the corporation, and since the interest of the latter is adverse to them, the condition is void. They rely upon *Matter of Liberman (supra)* to sustain this argument. They further contend that in such circumstance the condition cannot be brought to life by any act of the residuary legatees, after testator's death, consenting to acts of the corporation to effectuate compliance with the condition, in order to benefit the residuary legatees.

The specific legatees likewise argue, as above indicated, that if the condition be subsequent and the title to the stock be in them subject to divestment upon their failure to perform the condition, even so the corporation cannot cancel the indebtedness without impairing its capital, and that such fact renders the condition illegal and void.

" There are no technical words which indicate the difference between conditions precedent and subsequent, and the question is always one of intention." (*Booth* v. *Baptist Church,* 126 N. Y. 215, 242; 2 Davids on New York Law of Wills, § 878.) The substance of what the testator seeks to accomplish, and not merely the form of the language employed, must guide us in determining the nature of the condition. (See *Matter of Graves,* 194 Misc. 394.) The language of the instant condition in some respects indicates a condition precedent, and in other respects a condition subsequent. In a matter of this character, however, it has been held to be immaterial whether the condition be precedent or subsequent. (*Matter of Trybom,* 277 N. Y. 106.)

The conditions found in the cases relied upon by the specific legatees differ from the one imposed by the testator in this will. Those conditions were of a varying sort, relating for the most part to the conduct of the respective legatees. In such cases, respectively, because of the extent of the condition, or the control of its execution, or its impossibility of performance, or its

effect upon society, the conditions were held to be void, but the gift valid. The condition in the instant case, however, constitutes a limitation upon the size and value of these specific bequests to employees of testator's personal corporation and, conversely, at the same time amounts to a reservation of a greater amount in his residuary estate for his family. Through a technical application of certain recognized rules of law, the specific legatees seek to have the court enlarge by the sum of four-sevenths (160/280th) of $37,184.51 the testator's gift to them at the expense of testator's family. It is noted that since respondent, Therese K. Maijgren, has a three-sevenths interest in the corporation and only a one-third interest in the estate, she would personally gain if the contention of the specific legatees were to prevail. But she opposes their claim as violative of testator's purposes.

Testator's intent is expressed beyond any doubt. It should not and cannot be defeated if it may be lawfully effectuated. (*Eidt* v. *Eidt,* 203 N. Y. 325, 328; *Robinson* v. *Martin,* 200 N. Y. 159, 164; *Matter of Griffin,* 193 Misc. 419, 422.)

The will provides that the gift is conditional. It then suggests a manner in which the condition may be executed, to wit, " *I request* the corporation immediately on my death to pass a resolution cancelling all indebtedness against me and my estate." (Emphasis added) It is merely a suggested method. If the specific legatees could not get the corporation " to pass " such resolution, they could cancel the indebtedness in any other lawful manner which they might choose — such as, for example, paying testator's debt to the corporation themselves within one year from his death. There is nothing illegal or impossible of performance in this course. A fair and proper interpretation of testator's intent as shown from his emphatic statements expressing the condition is that the specific legatees must see to it that testator's debt to his personal corporation is paid or find a legal means of having the corporation cancel such indebtedness; otherwise the gift to the specific legatees shall fail and the stock become a part of testator's general estate.

In view of the action taken by respondent, Therese K. Maijgren, it appears to be unnecessary for the specific legatees to pay testator's indebtedness to the corporation. Within a month after testator's death the board of directors of the corporation, the specific legatees constituting two of the three members thereof, adopted a corporate resolution, quoted above, canceling testator's indebtedness and authorizing the secretary to do such further acts as might be required to complete the cancellation

and authorizing the president to deliver a formal release. There-
after the specific legatees had a change of mind and heart; and
now contend that their action as such directors was unauthorized,
illegal and void. At that time respondent, Therese K. Maijgren,
the only stockholder of record besides testator, had not consented
to such cancellation, but, as before noted, has now done so and
has consented to an amendment of the corporation's certificate
of incorporation in order that such cancellation of indebtedness
shall not constitute an impairment of the capital. Since there
are sufficient liquid assets to pay all creditors in full, and all
stockholders consent or their consents are within the control of
the specific legatees, there is nothing illegal or improper in the
proposed cancellation of testator's indebtedness and the corpor-
ate reorganization. (See *Kimmel Sales Corp.* v. *Lauster,* 167
Misc. 514, 519, VAN VOORHIS, J., and cases cited.) Moreover,
although the performance of the condition *in this manner* is to
some extent within the control of a third person whose interest
may be adverse to that of the specific legatees, as before noted
this is not the only way in which the condition may be met by
them, and they have the matter absolutely within their own
control. The condition is lawful and valid (*Oliver* v. *Wells,*
254 N. Y. 451, 458–459, affg. 229 App. Div. 356, affg. 134 Misc.
893, 900–901; *Matter of Kempf,* 252 App. Div. 28, affd. 278 N. Y.
613), and if it be not performed within one year from testator's
death as provided in the will, said gift of stock to the specific
legatees shall fail, and the stock shall become a part of the tes-
tator's general estate to be distributed in accordance with the
provisions of the will in respect thereof.

Submit decree accordingly.